GREWING *et ux* v. MINNEAPOLIS THRESHING-MACHINE CO.

1. Findings of fact as to which there is a conflict of evidence cannot be disturbed on appeal, though the witnesses testifying in accordance therewith were outnumbered by those testifying to the contrary.

2. There is injury authorizing recission of mortgages on a threshing machine and its earnings, and on real estate, where they were obtained on fraudulent representations that they were on the land only, and that a prior mortgage on the machine, in place of which they were given, would be released, and such release was not given.

3. Where plaintiffs were present and acting for themselves when they gave the mortgages which they seek to recind for fraud, the fact that M. was also present, because plaintiffs wished him there to see that everything was done right, does not make him their agent, so as to prevent their disputing him as to what was then said and done.

4. A court of equity, in its decree recinding for fraud, mortgages on a threshing machine and on real estate obtained in place of a prior mortgage on the machine, may decree foreclosure sale under second mortgage, which has already been had, to be a valid foreclosure sale under the first mortgage.

5. A decree rescinding, for fraud, mortgages on a threshing machine and on real estate given in place of a prior mortgage on the machine, which was not released, placed the parties in statu quo; the foreclosure sale under the second mortgage on the machine, which had already been had, being declared a valid foreclosure sale under the first mortgage; it not appearing that defendant's chattel security or the financial standing of plaintiffs was impaired between the time the new mortgage was given and the time it might have been foreclosed.

6. There is no such delay as will deprive plaintiffs (simple-minded, uneducated persons, not acquainted with their rights) of the right to rescind mortgages on a threshing machine and real estate, but supposed to be on the real estate alone, and obtained on the fraudulent representation that the prior mortgage on the machine, in place of which they were given, would be released, which was not done,—the second mortgages having been executed December 5, 1894; plaintiffs having first heard of the new mortgage on the machine November, 1895, and really found

out in February, 1896, that it did exist; they having then consulted an attorney, who thereupon demanded a release of first mortgage, and on July 28, 1896, after discovering that defendant was not going to cancel the old mortgage, gave written notice of rescission, though in May, 1896, defendant foreclosed its second mortgage, without any protest or objection from plaintiffs.

7. Payments made prior to discovery of fraud do not estop plaintiffs from rescinding after such discovery.

(Opinion filed September 2, 1899.)

Appeal from circuit court, Brookings county. Hon. J. O. ANDREWS, Judge.

Action by Frederick T. Grewing and wife against the Minneapolis Threshing-Machine Company to rescind a chattel

mortgage and certain real estate mortgages.    Judgment for plaintiffs.   Defendant appeals.   Affirmed.

*Mathews & Murphy* and *John M. Rees,* for appellant.

*Cheever & Hall,* for respondents.

HANEY, J.   The plaintiffs are husband and wife.   They are Germans, with but a slight knowledge of the English language, and are unfamiliar with the laws, customs, and methods of transacting business in this country.   In September, 1893, the husband purchased a threshing outfit of defendant, for which he gave four promissory notes, due at different dates from November 1, 1893, to November 1, 1895, to secure which he gave a mortgage on the outfit, which was filed in the register's office in the proper county September 14, 1893.   On December 5, 1894, plaintiffs executed and delivered to defendant six promissory notes, aggregating the amount then due upon the notes originally given for the threshing outfit due, at different dates from October 1, 1895, to December 1, 1896, to secure which they executed a mortgage upon a quarter section of land owned by the husband, a mortgage upon 80 acres of land owned by the wife, a mortgage upon the threshing outfit, and a mortgage npon the earnings thereof.   These real-estate mortgages were recorded December 8, 1894, and the chattel mortgages were filed at about the same time.   These notes and mortgages were executed by the wife as a surety only.   On May 30, 1896, defendant foreclosed the second mortgage on the threshing outfit by a sale of the property, which was purchased by defendant for $675, the expenses of sale being $67.85, leaving the net proceeds of the sale $607.15.   On July 18, 1896, and before the commencement of this action, the plaintiffs, by

their attorney, notified defendant in writing that they rescind-
ed the last mentioned notes, and the mortgages given to secure
the same, for the reason that they were procured by misrepre-
sentation and fraud, and that there had been failure of per-
formance and consideration on the part of defendant.

It is claimed by the plaintiffs that they intended to give
the new notes and real estate mortgages upon the condition
that the old notes should be surrendered, and the threshing
outfit released from the first chattel mortgage, that defendant's
agent promised to surrender the old notes and release the out-
fit, and that they did not know they were executing mortgages
on the same and on its earnings. The trial court found that the
husband first heard of the new chattel mortgages in the latter
part of November. 1895, and first learned positively of their
existence in January, 1896. Defendant did not surrender the
old notes or release the first chattel mortgage, and it is evident
that it did not intend to do so, when the new notes and mort-
gages were executed. Both of the plaintiffs testified positively
that defendant's agent promised to do so. Upon this issue of
fact the trial judge found for the plaintiffs. Concerning such
issue there is a direct conflict in the evidence. The trial judge
saw the witnesses. He was at liberty to believe the plaintiffs,
although they were outnumbered by the witnesses for defend-
ant, and this court cannot disturb his findings. The credibility
of witnesses is always for the trial court or jury. The fact is
thus established that defendant's agent made a promise with-
out any intention of performing it, and this was an actual fraud.
Comp. Laws, § 3507. The court below also found that the
plaintiffs relied upon the promise of defendant's agent to sur-
render the old notes and release the threshing outfit, and that

they would not have executed the new notes or real-estate mortgages, had it not been understood and agreed that he would do so; that they did not know they were executing mortgages upon the outfit and its earnings; and that in procuring their signatures to the new notes and mortgages, defendant, by its agent, took undue advantage of the ignorance of the plaintiffs, and of their unfamiliarity with business methods and transactions. As to these facts the evidence is conflicting, and the finding of the trial judge must be sustained.

Assuming, then, as we must, for the purpose of this appeal, that the execution of the new notes and mortgages was procured through the actual fraud of defendant's agent, to what relief, if any are the plaintiff's entitled in a court of equity, under the circumstances disclosed by the record in this action?

First, it is contended the plaintiffs cannot rescind because they have suffered no injury. Conceding that "fraud without injury is no cause of action," we think the retention by defendant of a lien upon the threshing outfit, after its agreement to release it, was a substantial injury to the plaintiffs. To have this property freed from any incumbrance was the principal, if not the only, inducement which led the plaintiffs to incumber their reality. With the old and new mortgages on this personal property, it was of no practical value. They could not sell it without the mortgagee's written consent, nor could they control its earnings. If it had been released, as plaintiffs understood it would be, they could have used or disposed of it at pleasure. The mortgages thereon were a burden which materially affected their enjoyment of the property.

One Miller was present when the new notes and mortgages were executed The husband testified that he wanted Miller

there, to see that everything was done right. It is contended that Miller was the agent of the plaintiffs, "that notice to him was notice to them," and that, as Miller testified there were no false promises or misrepresentations made, the plaintiffs are bound by his understanding of what took place. This contention is not tenable. The undisputed evidence shows that both plaintffs were present and acting for themselves. The material inquiry is what was in fact said and done by the parties, not what Miller now testifies was then said and done. In his account of the transaction as a witness, Miller is flatly contradicted by the plaintiffs, and the trial court was at liberty to believe their testimony.

It is further contended that plaintiffs cannot rescind because the parties cannot be placed in *statu quo*. The judgment rendered by the circuit court contains this provision: "And it is further hereby ordered, adjudged, and decreed that the foreclosure sale under chattel mortgage made by the defendant of the threshing outfit aforesaid on or about May 30, 1896, is hereby declared to be a valid foreclosure sale thereof under and by virtue of the first chattel mortgage given by plaintiffs to defendant in September, 1893, by right of subrogation, and the sum of $607.15, which was the net proceeds of said sale, shall be indorsed and credited by the defendant upon the notes given by plaintiff Frederick T. Grewing for the purchase price of said threshing outfit in September, 1893." We think the trial court, as a court of equity, had ample power to incorporate the foregoing provision in its decree, and that it fully protects defendant against any attack by the plaintiffs upon its foreclosure proceedings. This being so, the parties are placed by the decree in precisely the same position they occu-

pied before the new notes and mortgages were executed, except as to the time when the indebtedness became due; and, as defendant has not shown that its chattel security or the financial standing of the plaintiffs was impaired between the time the new notes were executed and the time when it might have foreclosed its new mortgage upon the threshing outfit, we have no hesitancy in holding that the parties are placed by the decree in substantially the same position they would have occupied if the new notes and mortgages had never been executed.

It is further contended that the plaintiffs did not rescind promptly. Recission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the statutory rules, one of which requires that he must rescind promptly upon discovering the facts entitling him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind. Comp. Laws, § 3591. The question as to what is reasonable diligence in such cases depends largely upon circumstances, and is generally a mixed question of law and fact, though the delay may be so long that the court will, as a matter of law, consider the offer to rescind too late. 21 Am. & Eng. Enc. Law, 82. The contracts sought to be rescinded in this case were executed December 5, 1894. Plaintiffs first heard of the new chattel mortgages in November, 1895. Frederick Grewing swears that he then heard people talking about it, but did not believe it at all. He first really found out that defendant had the new chattel mortgages in February, when he went to Brookings and consulted an attorney in regard to the matter, who demanded a return of the old notes and a release of the first chattel mortgage, and who on July

28, 1896, after discovering that the defendant was not going to cancel the old notes and mortgages, gave written notice of re-cission.   The trial court found the facts to be substantially as herein stated, and concluded, as matter of law, "that the plaintiffs, prior to the commencement of this action, and upon discovering the fact that said new notes and mortgages were procured by fraud, notified the defendant, in writing, that they rescinded the same," thus, in effect, concluding that the plaint-iffs did rescind promptly upon discovering the facts entitling them to do so.   Considering the ignorance of the plaintiffs, and their right to expect that defendant would fulfill its prom-ise to return the old notes and discharge the old chattel mort-gage, the length of the delay, and the nature of the acts done during the interval, with reference to their effect upon the re spective parties, and all the circumstances, we think the con-clusion of the circuit court was justified.   It is true that in May, 1896, after plaintiffs discovered the fraud, and before they elected to rescind, defendant foreclosed its second chattel mortgage, without any protest or objection on the part of the plaintiffs.   Such silence on their part would be a strong cir-cumstance against the view that they acted with reasonable diligence, were it not for the fact that plaintiffs are simple-minded, uneducated people, who were not acquainted with their rights.   And as the sale was of no benefit to them, and its validity is established by the decree, we think they should not be estopped from asserting their right to be placed in the position they would have occupied if they had not been fraud-ulently induced to incumber their real property.

The trial court found "that since the execution of the last executed notes and mortgages the plaintiff Frederick .T. Grew-

ng has made certain payments to the defendant, but none of said payments were made after the discovery that the defendant had procured the execution of said last-executed chattel mortgage by fraud as aforesaid." This finding is sustained by the evidence, and, of course, payments made prior to the discovery of the fraud cannot be held to estop the plaintiffs from rescinding after such discovery was made.

We discover no defects in the notice of rescission. As the facts found substantially correspond with the allegations of the complaint, it follows from what has already been said that it contains sufficient facts to constitute a cause of action. Attention has been given each assignment of error relative to rulings upon the introduction of evidence. Finding no reversible error, the judgment of the circuit court is affirmed.