[No. 9139. Department One. March 8, 1911.]

GUSTAVE STELTER *et al.*, *Appellants*, v. B. P. FOWLER *et al.*, *Respondents.*[1]

APPEAL—RECORD—STATEMENT OF FACTS—NOTICE. A statement of facts will not be struck out because the notice òf settlement failed to name the "place" of settlement, where amendments were proposed and accepted but for one immaterial change; since it in effect became an agreed statement.

SAME. Where the certificate of a statement of facts shows that it was certified by the judge who tried the case, the notice of settlement will not be held defective for failure to state the fact.

VENDOR AND PURCHASER—RESCISSION BY VENDEE—WAIVER—DEEDS —CANCELLATION—FRAUD—EVIDENCE—SUFFICIENCY. Where vendees could not read or write the English language, and the vendor defrauded them by representing that $3,000 had been paid on the land contract assigned to them and misread the contract, the taking of possession and cutting the crop by the vendees does not waive their right to rescind, where they did not then know of the misrepresentations as to the $3,000 payment, and acted with diligence as soon as they learned thereof, offering to reassign the land contract and leave the land as they found it; even if their conduct amounted to a waiver of some of the misrepresentations.

EXCHANGE OF PROPERTY—RESCISSION—NOTICE—RIGHTS OF PARTIES. An action to cancel a deed is notice of plaintiff's election to rescind, and his right to relief is not affected by his subsequent default and forfeiture of the land contract assigned to him by defendant in consideration and exchange for plaintiff's land.

[1]Reported in 113 Pac. 1096; 114 Pac. 879.

APPEAL—DECISION—REMAND. A remand, with directions to ascertain the damages under the issues presented, requires a retrial conformable to the applicable rules of law.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered April 6, 1910, upon findings in favor of the defendants, dismissing an action to cancel a deed, after a trial on the merits before the court without a jury. Reversed.

*Roche & Onstine* and *F. W. Girand*, for appellants.

*Henley, Zent & Cannon* and *Davis & Davis*, for respondents.

GOSE, J.—On August 18, 1909, the plaintiffs commenced this action for the purpose of setting aside a deed which they had theretofore executed to defendants, and for damages. They have appealed from a judgment dismissing the action. In due time the appellants filed and served a proposed statement of facts, and gave notice to the respondents and their counsel, "that on Friday the 26th day of August, 1910, at ten o'clock, a. m., they would make application to the Honorable E. H. Sullivan, one of the judges of the above entitled court, to settle and sign the statement of facts" in the cause. The notice was properly entitled. Within the time fixed by statute, the respondents filed certain proposed amendments, all of which were allowed by the judge, except that he refused to substitute the word "no" for the word "yes," and thereupon he certified the statement of facts. This fact is shown in the judge's certificate and also appears from a comparison of the proposed amendments with the certified statement of facts.

The respondents have moved to strike the statement of facts, on the ground that the "place" of settlement of the statement was not named in the notice as required by Rem. & Bal. Code, § 389. The testimony of the witnesses would not have been changed by the substitution proposed. A reading of the context clearly discloses what the witnesses intended

to say. No one could be misled by the use of either of the words "yes" or "no." In substance and effect, it became an agreed statement, and the judge was warranted in certifying it, under the provisions of the statute above cited. The motion also suggests that the notice fails to state that Judge Sullivan is the judge before whom the cause was tried. This, however, appears in the certificate. The motion is denied.

The complaint, in substance, alleges that the appellants were the owners of one hundred and sixty acres of land in Spokane county, of the value of $12,000, subject to a mortgage of $2,900, on the 11th day of June, 1909; that the respondents had a contract for the purchase of a section of land in Adams county at the agreed price of $12,800; that on the date stated, the appellants conveyed their land to the respondents, in consideration of the assignment of the contract which the latter held on the Adams county land; that the respondents induced the appellants to make the exchange by representing that $3,000 had been paid on the contract; that the land was worth from $35 to $40 per acre; that it was in crop and would produce from twenty to twenty-five bushels per acre; that there had been three or four recent heavy rains upon the land; and that it was free from mustard and thistle. It is also alleged that the appellants cannot read or write the English language; that they relied upon the respondents to correctly read the contract to them; that no payments had been made on the land; that it was not worth to exceed fifteen to twenty dollars per acre; that the crop did not yield more than five bushels per acre; that no rain had fallen; that a short time after the exchange of conveyances, the appellants moved onto the land, and upon discovering that the conditions were not as represented, offered to reassign the contract, and demanded a return of the deed. The prayer is for a rescission and for damages. Issue being joined upon the averment of fraud, the case proceeded to trial.

The court found that the respondents had a contract for the purchase of a section of land in Adams county for the

sum of $12,800, and that there was an equal exchange of con-
veyances as alleged in the complaint.   Findings five and six
are as follows:

"That the said defendants represented to plaintiffs that
three thousand dollars ($3,000) had been paid by defendants
upon said contract price; that said land was of the value of
$25 to $30 per acre; that said land was free from mustard
and thistle, all of which were false.

"That plaintiffs were unable to read and write English;
that said defendants have not paid the sum of three thousand
dollars ($3,000) upon said contract, and said land was not
worth more than thirteen thousand dollars ($13,000)."

There was a further finding, that the appellant husband
went to Adams county in the month of May, 1909, in search
of land; that he sought the respondents and proposed a trade;
that in company with a resident of that part of the county, he
drove by the land in question and had an opportunity to in-
spect it; that thereafter the respondent went to Spokane
county at the request of the appellants, inspected their land,
and consummated the trade about June 9, 1909; that the
next week the appellants moved to Adams county, and after
seeing the land and observing the conditions, purchased a
house and barn and moved them upon the land; that they oc-
cupied the buildings and exercised dominion over the land con-
tinuously until after the harvest of 1909; that they cut and
stacked the crop grown thereon; that on July 28 the appel-
lants listed the land for sale with certain real estate agents
for a period of six months, at the price of $35 per acre, and
that they made no effort to rescind the contract of sale and
exchange until the commencement of the action.   The court
deduced the legal conclusion that the appellants "elected to
and did affirm the contract," and that they cannot now re-
scind.   At the trial the appellants tendered a reassignment of
the contract for the Adams county land.

There is abundant evidence of the most convincing nature
to support all the findings of fact made by the court, except

that the date of the listing of the Adams county land for sale
with the real estate agents was upon June 28 instead of July
28, and the listing price was thirty instead of thirty-five dol-
lars per acre. The evidence discloses a further significant
fact not found by the court, viz., that the appellants shipped
their goods, including the contract, from Spokane to Adams
county, and that the goods did not arrive until some three or
four weeks after the appellants moved onto the land. It was
not until after the middle of July that the appellants re-
ceived their goods and with them the contract. They then
had the contract reread to them, and first learned that there
had been no payment on the land and that the representation
that $3,000 had been paid was false. While the evidence is
not clear upon the point, we think it may reasonably be in-
ferred that the crop had then been cut and stacked. Upon dis-
covering that no payment had been made on the land, the ap-
pellants proceeded with reasonable promptitude to give notice
of rescission. They took nothing from the land, and left the
house and barn upon it and cut and stacked the crop. The
respondents were in no way injured or misled.

The taking of possession and the cutting of the crop may
properly be held to constitute a waiver as to all misrepre-
sentations then known, but they do not preclude a rescission
for fraud which was discovered later. Nor can it be said that
the appellants were wanting in diligence in having the con-
tract reread to them. They had relied upon the respondent
husband and one Schutz, a real estate agent, to correctly
read the contract, and it does not lie with respondents to urge
that the appellants should bear the burden of their own credu-
lity. No man should be permitted to sell or exchange a lie
for more than its intrinsic value. It has from the beginning
been one of the boasted tenets of equity that it would protect
the weak, ignorant, and credulous against the machinations
of the strong and the designing. The question of the value
of the land and the amount of the yield may be treated as ex-
pressions of opinion, but all other matters, such as recent

rains, and that the land was free from mustard and thistle, were statements of material facts. It is not important to determine whether Schutz, the real estate agent, was the agent of appellants or of respondents. In either event the evidence is convincing that there was a collusion between him and the respondent husband, and that he, with the knowledge of the latter, misread the contract to the effect that $3,000 had been paid. It is also worthy of notice that the Adams county land was listed for sale with Schutz upon his representations to the appellants that he could promptly sell it at a price that would compensate them for their land. We have no doubt that this was but another step in the furtherance of the fraud. Upon the facts stated, the election to rescind was timely, and the respondents were in no wise prejudiced or misled. This view is supported by the following cases: *Best v. Offield*, 59 Wash. 466, 110 Pac. 17; *Grewing v. Minneapolis Threshing-Machine Co.*, 12 S. D. 127, 80 N. W. 176. The prudent protection of perishable property in itself creates but a slight presumption of ratification, and when other fraudulent representations forming a material part of the contract are thereafter discovered, such act will not defeat the right of rescission. The condonation of a part of the fraud does not forbid a rescission for fraud discovered later and not condoned. *Tarkington v. Purvis*, 128 Ind. 182, 25 N. E. 879, 9 L. R. A. 607.

In harmony with the evidence, the court found that the appellants cannot read or write the English language, and that they, relying upon the respondent husband and Schutz, who under the evidence was in collusion with him, to correctly read the contract, conveyed property of the value of $12,000 or more, exclusive of the mortgage, and received in return a contract upon which nothing had been paid and which had no value in excess of the amount due upon it. They waived a part of the misrepresentations, but did not waive the one as to the $3,000 payment upon the contract.

The decree will be reversed, with directions to cancel the

deed from the appellants to the respondents, and to proceed with the trial of the case in the ascertainment of the appellants' damages under the issue presented by the pleadings.

DUNBAR, C. J., FULLERTON, MOUNT, and PARKER, JJ., concur.

## ON REHEARING.

[Decided April 5, 1911.]

PER CURIAM.—The respondents have filed a motion asking for a modification of our former opinion. The grounds relied upon are thus stated in the motion:

"(1) That after the decision of the lower court and pending the appeal, appellants by their own negligence and indifference permitted the contract to which they held an assignment from respondents for the section of land to be forfeited by reason of appellants' failure to carry out and comply with its terms and conditions."

At the trial the appellants tendered a reassignment of the contract. The commencement of the action gave notice of their election to rescind. Their failure or refusal thereafter to keep the contract for the Adams county land in force does not affect their right to the relief sought. After the commencement of the action, the parties were required to stand upon their rights as they then existed.

(2) In our former opinion we said:

"The decree will be reversed, with directions to cancel the deed from the appellants to the respondents, and to proceed with the trial of the case in the ascertainment of the appellants' damages under the issue presented by the pleadings."

It is said in the motion that the "respondents should not be shut out by a summary order from contesting the various, or at least some of the elements of damages claimed by the appellants," and that the opinion may mislead the court with respect to the recoverable damages. It is sufficient to say that the trial court will, of course, try the question of damages conformably to the applicable rules of law.