410 A.2d 303

**Barry L. JONES and Mary Belle Jones**

v.

**HARRISBURG POLYCLINIC HOSPITAL, Charles R. Beittel, Jr., M. D. and P. McAloose.**

**Appeal of Charles R. BEITTEL, Jr., M. D.**

Superior Court of Pennsylvania.

Argued March 13, 1978.

Filed Aug. 23, 1979.

Petitions for Allowance of Appeal Granted Feb. 11, 1980.

James W. Evans, Harrisburg, for appellant.

Edward B. McDaid, Philadelphia, for appellees Jones.

Edward E. Knauss, III, and Lee C. Swartz, Harrisburg, did not submit briefs on behalf of appellees Harrisburg Polyclinic Hospital and P. McAloose, respectively.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PRICE, Judge:

This case involves a cause of action in trespass for medical malpractice. Appellant Dr. Charles R. Beittel, Jr. appeals from the July 25, 1977 order of the en banc lower court which denied his motions for judgment non obstante veredicto, new trial, and for shaping of the verdict.

The following facts were adduced at trial. On May 14, 1972, appellee Mary Belle Jones[1] underwent surgery at the Harrisburg Polyclinic Hospital to correct gynecological and suspected abdominal problems which she was experiencing. Appellant Dr. Charles R. Beittel, Jr. was her physician, and the other named defendant, Patricia McAloose, was the nurse anesthetist present during the surgical procedures

---

1. Although there are two appellees in this case, Mary Belle Jones and her husband Barry L. Jones, all further reference to appellee will pertain to Mary Belle Jones unless otherwise specified.

performed on appellee.[2] Three surgical procedures were
performed: 1) a procedure called dilation and curettage[3] (D.
& C.) was performed by appellant; 2) a laparoscopy[4] was
performed by a Dr. Rohrabaugh, assisted by appellant; and
3) a laparotomy[5] was performed by appellant, assisted by
Dr. Milan Chepko. Appellee was given a general anesthetic
by nurse McAloose prior to surgery. Nurse McAloose ini-
tially positioned appellee to facilitate access to the operative
site, *i. e.*, the vaginal area. An intravenous apparatus was
set to run into appellee's left arm, and accordingly, her arm
was extended on an armboard out from the side of the
operating table in order to facilitate this process. Upon
awakening in the recovery room following surgery, appellee
experienced severe pain in her neck, left shoulder, and left
arm. This pain was diagnosed as resulting from a suprasca-
pular nerve palsy allegedly caused by the malpositioning of
the patient.

As a result of her injury, appellee and her husband
brought suit against appellant, nurse McAloose, and Poly-
clinic Hospital. The theories of liability asserted against
appellant were those of informed consent and negligence,
through the doctrine of res ipsa loquitur. Res ipsa loquitur
was also the basis upon which appellee sought to recover
against nurse McAloose, while the case against the hospital
was based solely on respondeat superior.

Expert testimony presented at trial indicated that the
injury appellee suffered was of the type that does not
usually occur absent negligence on someone's part. In addi-
tion, in all likelihood, the injury occurred while appellee's

2. A resident physician present during part of the operation, Dr. Milan
Chepko, was initially named as a defendant in appellees' complaint,
but was subsequently dropped from the suit by consent of appellees.

3. A D. & C. involves the scraping of the womb.

4. A laparoscopy is a visual observation of the patient's pubic area
achieved by means of a lighted tube inserted through a small incision
in the umbilicus.

5. A laparotomy is an exploratory surgery, in this case, of the pa-
tient's internal reproductive organs.

body was in a state in which it was paralyzed and insensible to pain, *i. e.,* while she was in the operating room. Appellant testified on cross-examination that it was his duty to preserve his patient's neurology during the course of surgery and to personally observe and check the positioning of the patient. The jury found all of the defendants liable, and returned a verdict in appellees' favor in the amount of $56,000.

Prior to the commencement of trial, defendants McAloose and Polyclinic Hospital entered into a joint tortfeasor release with appellees for $25,000.[6] Appellant filed post-trial motions asking for judgment N.O.V., new trial, and for molding of the verdict so as to mark it "satisfied in full," or in the alternative, to reduce it, as applied to him, by two-thirds. All of appellant's motions were denied by the en banc panel of the Dauphin County Court of Common Pleas, and the verdict as applied to him was reduced by half, *i. e.,* to $28,000, with $25,000 apportioned to appellee Mary Belle Jones and $3,000 apportioned to her husband Barry L. Jones.

On appeal, appellant raises numerous contentions. The first issue which we will address is appellant's contention that the doctrine of res ipsa loquitur under Pennsylvania law does not apply to medical malpractice cases. We disagree.

The Restatement (Second) of Torts section on res ipsa loquitur, § 328D, as specifically adopted by the Pennsylvania Supreme Court in the case of *Gilbert v. Korvette's Inc.,* 457 Pa. 602, 327 A.2d 94 (1974) provides that:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

**6.** This release was entered in accordance with the Uniform Contribution Among Tortfeasors Act [UCATA], Act of July 19, 1951, P.L. 1130 § 4 (12 P.S. § 2085) which provides that:

"A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid."

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached."

■ In asserting that the doctrine of res ipsa loquitur does not apply to medical malpractice cases, appellant cites pre-*Gilbert* cases for the proposition that no presumption or inference of negligence arises merely because the medical care terminates in an unfortunate result which might have occurred even though proper care and skill had been exercised, and that the common knowledge or experience of laymen is not sufficient to warrant their passing judgment on the issue. (Appellant's brief at 22–23). We find that the doctrine of res ipsa loquitur does apply to medical malpractice cases. In adopting § 328D of the Restatement (Second) of Torts, the supreme court enumerated no exceptions to the doctrine. The court explicitly stated that its reason for adopting the rule was to clarify the confusion which developed in this Commonwealth concerning the availability and effect of the doctrine. "The virtue of the Restatement rule is that when dealing with problems of proof, it abjures distinctions based on procedural questions or issues of substantive tort duty and focuses instead on purely evidentiary concerns." *Gilbert v. Korvette's Inc., supra*, 457 Pa. at 612 n. 26, 327 A.2d 100 n. 26. The drafters of § 328D obviously intended it to apply to medical malpractice cases because the Comments to § 328D specifically use medical malpractice as an example to which § 328D may be employed. *See* Restatement (Second) of Torts, Comment

(d), and Illustration 9 (1965). Although no appellate court of this Commonwealth has yet addressed this issue,[7] we hold that if the intent of our supreme court "to simplify, clarify, and improve the law in light of modern conditions" is to be carried out, this court should not read an unspecified exception into the doctrine. Indeed, the facts of the instant case particularly lend themselves to the application of the doctrine. Appellee was injured while under the care of the defendants named in her complaint. She alleged an injury to a part of her body unrelated to the area for which she sought treatment. She could not aver the precise conduct of the named defendants because she was unconscious during treatment, although the circumstantial evidence points toward the negligence of one or more of the parties sued.

██ Notwithstanding the applicability of the doctrine of res ipsa loquitur to medical malpractice cases, we conclude that the court below was in error in instructing the jury as to res ipsa loquitur with regard to the specific facts of this case because appellees failed to sustain their burden of proving by a preponderance of the evidence that the negligence pointed to appellant.

Under § 328D(1)(b), the plaintiff has the burden of proving, by a preponderance of the evidence, that other responsible causes, including the conduct of plaintiff and third persons, are sufficiently eliminated by the evidence. The failure to eliminate "other responsible causes" precludes the lower court from instructing the jury on the doctrine of res ipsa loquitur.

"[I]n any case where there is no doubt that it is at least equally probable that the negligence was that of a third person, the court must direct the jury that the plaintiff has not proved his case." Restatement (Second) of Torts § 328D, Comment (f). Even though, exclusive control by

7. Although no appellate court in the Commonwealth has heretofore addressed this issue, it has been addressed by some of our state trial courts. *E. g. Anderson v. Zernich Clinic*, 2 D. & C.3d 65 (1977), a case factually similar to the instant case, in which the Court of Common Pleas of Beaver County held that § 328D was applicable to medical malpractice cases.

appellant of the injury-causing instrumentality or of all reasonable probable causes need not be proven in order to find liability under § 328D, nevertheless, "the critical inquiry is . . . whether a particular defendant is the responsible cause of the injury." *Gilbert v. Korvette's Inc., supra,* 457 Pa. at 614, 327 A.2d at 101.

Appellee's position on the operating table changed during the course of the operative procedures performed on her. During the D. & C., she was placed in a modified dorsal lithotomy or supine position which entailed her laying on her back in a flat position with her feet in stirrups. To facilitate the laparoscopy, appellee was placed in the Trendelenberg position. In this position, the patient's abdomen and legs are raised, and her head and shoulders are lowered. Appellee's position was again altered for the laparotomy procedure. For that procedure, the Trendelenberg position again was employed, but the degree of slant of the table was more severe than that used for the laparoscopy procedure.

Dr. Charles Rohrabaugh was the operating surgeon during the laparoscopy procedure, and thus was responsible for the positioning of appellee during that time.[8] The malpositioning of appellee which caused her injury certainly may have occurred while her position was being changed for the various procedures performed. Specifically, the malpositioning which caused appellee's injury may have occurred in preparation for the laparoscopy procedure, and thus, according to Dr. Rohrabaugh's testimony, would have been his direct responsibility. Indeed, he might have been the cause of the malpositioning. Our review of the record fails to disclose sufficient evidence, as a matter of law, to eliminate

8. The dissenting opinion takes issue with this evaluation of the record. Dr. Rohrabaugh on direct examination testified as follows:
"In each patient when I am going to do a laparoscopy, I specifically look at the positioning of the patient, particularly as it relates to the semi-lithotomy and the position of the legs, knees, thighs in relation to the patient's abdomen. If there had been anything unusual about that position in any patient that I do, I would ask the circulating nurse to take corrective action to change that position." (N.T. 272a).
This answer directly reveals duty, control and responsibility.

Dr. Rohrabaugh as an "other responsible cause." In this light, we must conclude § 328D(1)(b) was not satisfied and that as a result, the court below was in error in instructing the jury on the doctrine of res ipsa loquitur as applied to the specific facts of this case. Accordingly, we vacate the judgment of the court below, and remand the case for a new trial.

Although we have concluded that a new trial is necessary, appellant raises another issue which must be discussed in order to insure that any subsequent judgment in appellees' favor, if any, will be apportioned properly in light of the joint tortfeasor release. In this regard, appellant contends that the verdict, as applied to him, should be reduced by two-thirds. We hold that the court below properly molded the verdict.

▬▬ An employer found to be vicariously liable for the negligence of his employee assumes a liability identical to that of his employee, *i. e.*, their liability is one and the same, and the plaintiff may collect all or part of the judgment or settlement from either party. *See Nationwide Mutual Insurance Co. v. Philadelphia Electric Co.*, 443 F.Supp. 1140 (E.D.Pa.1977); *Russell v. United States*, 113 F.Supp. 353 (M.D.Pa.1953); *Parker v. Rodgers*, 125 Pa.Super. 48, 189 A. 693 (1937). In the instant situation, when multiple parties are found to be liable, the important consideration in determining the pro rata amount of the judgment for which the remaining negligent party is liable, is the number of primarily liable parties. As applied to the instant case, since there were only two parties found to be primarily liable, *i. e.*, appellant and nurse McAloose, appellant was entitled to have the entire verdict reduced by only one-half.

In reaching this conclusion, we rely on this court's decision in *Parker v. Rodgers, supra*, and its progeny. The *Parker, Nationwide*, and *Russell* cases all involved suits for contribution among joint tortfeasors. *Parker*, a pre-UCATA case, involved a two-car automobile accident in which three defendants, Marion Rodgers (driver of car A), Robert Glenzinger (driver of car B) and Margaret Paugh (owner of car B

and employer of defendant Glenzinger), were all found to be negligent. Mrs. Paugh was held negligent on the doctrine of respondeat superior. Defendant Rodgers' insurance company, which paid half of the judgment, sued Glenzinger and Paugh and attempted to obtain contribution from each, on the theory that each of the three defendants was liable for one-third of the judgment. In affirming the lower court and holding that the insurance company was not entitled to contribution, this court stated:

"Rodgers and Glenzinger were the persons who committed the actual tort or wrong as distinguished from a legal tort. Mrs. Paugh was not present when the accident occurred, but was only liable as the master of her servant and driver, Glenzinger. It was not alleged nor shown that she was personally and directly guilty of any trespass or was responsible by reason of anything which she personally did or omitted to do. Her responsibility even to the plaintiff did not arise from any act which was on her part morally wrong, but her liability was based on a legal principle that has become a part of the positive law of the Commonwealth that the negligence of a servant acting within the scope of his employment is imputed to the master. We agree with the learned judge of the court below that Mrs. Paugh's liability being purely derivative and because she and the driver are responsible to the plaintiff for one and the same act of negligence committed by the servant alone, both reason and justice require it to be held that Rodgers is not entitled to contribution since he has paid but one-half of the judgment. . . .
That our conclusion may not be misinterpreted we call attention to the fact that we do not adopt as a basis for the measure of contribution the number of automobiles involved in the accident, but rather the number of persons primarily and directly concerned in the tort committed." *Parker v. Rodgers, supra,* 125 Pa.Super. at 52, 53, 189 A. at 696.

Similarly, in *Nationwide* and *Russell,* both post-UCATA contribution cases applying Pennsylvania law, the federal

district court held that in molding the verdict, the employer's share was identical to the employee's in that the employer had not committed the tort but was liable solely on the basis of respondeat superior.

"[I]t is not the total number of defendants involved who could have been liable to the deceased's estate but the number of directly and primarily liable parties which determines the number of pro-rata shares. Only two parties were directly and primarily liable, Carr & Duff and Hinkle [employee of the third defendant, Bellmont]. Therefore liability for contribution is divisible in only two parts, one part being based upon the negligence of Carr & Duff and the other part being based upon the negligence of Hinkle . . ." *Nationwide Mutual Insurance Co. v. Philadelphia Electric Co., supra* at 1146–1147.

In the instant case, Polyclinic Hospital's liability was based solely on the theory of respondeat superior. Under these circumstances, we hold that the court below was correct in molding its verdict to reflect the fact that there were only two primary tortfeasors, to-wit, appellant and nurse McAloose. Therefore, the verdict, as applied to appellant, is correctly apportioned at one-half of the judgment, rather than two-thirds.

Accordingly, we vacate the judgment of the court below, and remand the case for a new trial and further proceedings consistent with this opinion.

CERCONE, President Judge, HOFFMAN and SPAETH, JJ., file dissenting opinions.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

CERCONE, President Judge, dissenting:

Although I agree with the majority's conclusion that the doctrine of res ipsa loquitur applies to medical malpractice cases in Pennsylvania, I would affirm the order and judgment of the lower court that applied the doctrine to the facts in this case. Therefore, I dissent.

Under Restatement (Second) of Torts, one of the three prongs that must be satisfied before res ipsa loquitur applies in a case is that the plaintiff has the burden of proving that "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence." § 328D(1)(b). In the instant case, Mary Belle Jones underwent three surgical procedures that required three different positions on the operating table to facilitate each process. Expert testimony disclosed that Mary Belle's shoulder injury was most probably the result of the malpositioning during one of the three positions in the operating room. (R. 230a, 236a–237a.) By his own admission, Dr. Beittel stated that it was his duty as the operating physician to "preserve" the patient neurologically during the course of the surgery, (R. 117a), and further expert testimony showed that it was the duty of the operating surgeon to monitor the position of the patient. (R. 406a–407a.) The majority concludes that since one of the three surgical procedures was performed by Dr. Rohrabaugh, he became the operating physician and was then responsible for the patient's position at that time thus relieving Dr. Beittel of his duty. From this, the majority states that the record does not support, as a matter of law, the exclusion of Dr. Rohrabaugh as an "other responsible cause" under § 328D(1)(b) of the Restatement.

I cannot agree with the majority's evaluation of the record. Although one of the surgical procedures, the laparoscopy, was performed by Dr. Rohrabaugh, there is no evidence that Dr. Beittel's duty to monitor the patient ever terminated. Dr. Beittel testified that he was present in the operating room during the laparoscopy and that he "did, indeed, look through the laparoscope." (R. 86a, 92a.) Dr. Rohrabaugh testified that:

"As best I can recall it, we actually consulted each other during the laparoscopy rather than to say it was done after. As I was looking through the laparoscope, . . . I . . . would have him [Dr. Beittel] actually look through the laparoscope over my shoulder so that he can

see what I am talking about and so that in actuality the consultation that went on took place during the actual procedure not as a separate time entity." (R. 268a–269a).

Exclusive control need not be proved in order to find liability under § 328D. Instead, the critical inquiry is "whether a particular defendant is the *responsible cause* of the injury." *Gilbert v. Korvette's Inc.*, 457 Pa. 602, 614, 327 A.2d 94, 101 (1974) (Emphasis supplied).

Based on the above-mentioned evidence of Dr. Beittel's active participation in the entire surgical procedure, I would find the plaintiff had sufficiently proved that Dr. Beittel continued to be the "responsible cause," which was not terminated by Dr. Rohrabaugh's participation during the surgical procedures.[1]

SPAETH, Judge, dissenting:

I cannot agree with Judge PRICE's statement that the doctrine of res ipsa loquitur[1] is inapplicable in this case because a "review of the record fails to disclose sufficient evidence, as a matter of law, to eliminate Dr. Rohrabaugh as an 'other responsible cause'" at 307.

It is settled that the doctrine of res ipsa loquitur as defined in section 328 D of the Restatement (Second) of Torts[2] may be applicable in a case wherethere are multiple

1. The majority does not discuss the other two requirements of § 328D that the event must be the kind "which ordinarily does not occur in the absence of negligence," and "the indicated negligence is within the scope of the defendant's duty to the plaintiff." Both of these requirements are adequately satisfied through Dr. Beittel's own admission that he had the duty to preserve the patient neurologically (R. 117a), and further expert testimony that the injury did not usually occur without negligence. (R. 212a.)

1. There is some question as to whether the phrase res ipsa loquitur should be labelled a doctrine. *See* W. Prosser, Handbook of the Law of Torts § 39, p. 213 and n. 72 (4th ed. 1971).

2. Section 328D provides:
 "(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
 "(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

defendants. *See Gilbert v. Korvette's, Inc.* 457 Pa. 602, 327 A.2d 94 (1974); Annotation, 38 A.L.R.2d 905 (1954).[3] In *Gilbert* the plaintiff was injured by an escalator in a Korvette's store. The Supreme Court held that res ipsa loquitur was applicable as an inference from circumstantial evidence,[4] against both Otis Elevator Company and Korvette's. The Court did not require the plaintiff to eliminate either Otis or Korvette's, for the evidence supported the conclusion that they both were responsible causes of the injury. The Court stated: "[I]f *responsibility* is vested in and shared by two or more parties, each may be subjected to liability." *Id.*, 457 Pa. at 614–15, 327 A.2d at 101 (emphasis in original). *And see* W. Prosser, Handbook of the Law of Torts § 39, p. 221 (4th ed. 1971); Restatement (Second) of Torts § 328D, comment g (1965).[5]

> "(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
> "(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
> "(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
> "(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached."
> Restatement (Second) of Torts § 328D (1965).

3. In *Loch v. Confair*, 372 Pa. 212, 93 A.2d 451 (1953), where the plaintiff was injured by an exploding bottle of soda on a grocer's shelf, res ipsa loquitur was applied against both the bottler and the grocer store owner.

4. Res ipsa loquitur is not a presumption of negligence; it merely describes a factual inference that may be drawn from circumstantial evidence. *See* Restatement (Second) of Torts § 328D, comment b (1965).

5. Comment g provides:
> "*Defendant's exclusive control.* The plaintiff may sustain this burden of proof with the aid of a second inference, based on a showing of some specific cause for the event which was within the defendant's responsibility, or a showing that the defendant is responsible for all reasonably probable causes to which the event can be attributed. Usually this is done by showing that a specific instrumentality which has caused the event, or all reasonably probable causes, were under the exclusive control of the defendant.

The conclusion that a plaintiff may be entitled to an application of res ipsa loquitur against multiple defendants is especially important in medical malpractice cases where the plaintiff is injured by one or more of the operating room personnel. *See Ybarra v. Spanguard*, 25 Cal.2d 486, 154 P.2d 687 (1944); *Fogal v. Genesee Hosp.*, 41 App.Div.2d 468, 344 N.Y.S.2d 552 (1973); *Talbot v. Dr. H. W. Graves Latter Day Saints Hosp.*, 21 Utah 2d 73, 440 P.2d 872 (1968) (ELLET, J., dissenting); Annotation 82 A.L.R.2d 1262 (1962). The present case is such a case. The plaintiff produced evidence to prove that she was injured while unconscious in the operating room. She also produced evidence that the injury was probably caused by the improper positioning of her body

Thus the responsibility of the defendant is proved by eliminating that of any other person.

"It is not, however, necessary to the inference that the defendant have such exclusive control; and exclusive control is merely one way of proving his responsibility. *He may be responsible, and the inference may be drawn against him, where he shares the control with another*, as in the case of the fall of a party wall which each of two landowners is under a duty to inspect and maintain. He may be responsible where he is under a duty to the plaintiff which he cannot delegate to another, as in the case of a landlord who leases premises dangerous to persons on the public highway, which his tenant undertakes to maintain. He may be responsible where he is under a duty to control the conduct of a third person as in the case of a host whose guests throw objects from his windows. It may be enough that the defendant was formerly in control, at the time of the probable negligence, as in the case of a beverage bottler whose product poisons the consumer, when there is sufficient evidence to eliminate the responsibility of intermediate dealers. Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a res ipsa loquitur case. The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against."

Restatement (Second) of Torts § 328D, comment g (1965) (emphasis added).

In *Gilbert* the Supreme Court gave the following example:

A, a pedestrian on the public sidewalk, is injured by the fall of a sign from the front of a building owned by B and leased to C. Both B and C are under a legal duty to members of the public using the highway to exercise reasonable care to inspect and maintain the sign. It can be inferred that the event was due to the negligence of both B and C.

457 Pa. at 615 n. 32, 327 A.2d at 102 n. 32.

on the operating table, and was not of a type to occur without negligence. *See Fogal v. Genesee Hosp., supra* (injury to part of body remote from that operated upon); *Horner v. Northern Pacific Beneficial Association Hospitals, Inc.,* 62 Wash. 351, 382 P.2d 518 (1963) (same).

The plaintiff could not prove which specific person or persons in the operating room negligently positioned her on the table. However, in my opinion the inability on her part to point the finger at a specific nurse or doctor to the exclusion of all others should not prevent the application of res ipsa loquitur. I should not force the plaintiff to pick one person and try to eliminate all the others. Instead I should permit the plaintiff to subject all the defendants to res ipsa loquitur. Each defendant could then argue, and if he wishes, offer evidence, that he was not responsible, and also, that some one else was responsible.[6] The jury would then decide whether the circumstantial evidence and the inferences arising from it were sufficient to hold any or some or all of the defendants responsible.

This approach to the problem of res ipsa loquitur and multiple defendants is supported by the case law, *see Ybarra v. Spanguard, supra,* and indeed is at least consistent with if not required by the Supreme Court's decision in *Gilbert. See Easter v. Hancock,* 237 Pa.Super. 31, 346 A.2d 323 (1975) (where three doctors were all involved in inserting and removing hemostats all three were responsible for hemostat left in patient).

The major problem presented in this case is not the fact that there are multiple defendants but the fact that the plaintiff failed to sue one of her possible defendants, Dr. Rohrabaugh, who was present during part of the operation. If she had joined him as a defendant we should have a situation very similar to that presented in *Gilbert.* Perhaps this failure to join Dr. Rohrabaugh is the basis of Judge PRICE's conclusion that res ipsa loquitur does not apply, the

**6.** This does not mean that the burden of proof shifts to the defendant. *See* note 4 *supra.*

theory being that an unconscious patient plaintiff must sue all possible defendants in order to qualify for the application of res ipsa loquitur. If this is the basis of Judge PRICE's conclusion, there is some support for it in the cases, especially those that follow *Ybarra v. Spanguard, supra.* For example, in *Inouye v. Black,* 238 Cal.App.2d 31, 47 Cal.Rptr. 313 (1965), where the plaintiff brought suit against the surgeon alone for negligence in an operation in which the surgeon had wired together his vertebrae and the wire had later fragmented into small pieces and caused injury, the court held res ipsa loquitur inapplicable. In so holding the court stated:

> A group of persons and instrumentalities may combine in the performance of a medical procedure culminating in an unexpected, mysterious and disastrous result. With the sources of disaster personified in a group of defendants, the demand for evidence pointing the finger of probability at any one of them is relaxed; all may be called upon to give the jury evidence of care. . . .
> We do not have that situation here. Neither the firm which manufactured the wire nor the hospital which supplied it has been sued. The negligence of each is just as possible as some unspecified and indeterminate lack of care on the surgeon's part. With only one of the several involved agents before the court, negligence could not be inferred without some evidence reasonably pointing to the surgeon.

*Id.* at 35, 47 Cal.Rptr. at 316.

*See Spannaus v. Otolaryngology Clinic,* 308 Minn. 334, 242 N.W.2d 594 (failure to join anesthesiologist who might have caused the neck injury). *See also Talbot v. Dr. H. W. Grave's Latter Day Saints Hosp.,* 21 Utah 2d 73, 440 P.2d 872 (1968) (HENRIOD, J., concurring) (commenting that if res ipsa loquitur should apply in such cases the plaintiff must sue all participants in the surgery).

However, the situation presented in this case is very different from the situation presented in *Inouye* ; it more

closely resembles that presented in *Corcoran v. Banner Super Market, Inc.*, 19 N.Y.2d 425, 280 N.Y.S.2d 385, 227 N.E.2d 304 (1968). In *Corcoran*, the plaintiff was struck by a board that fell from a space between two abutting store premises. She brought suit against one store owner but not against the other and a verdict was rendered in her favor on the basis of res ipsa loquitur. The appellate division reversed, holding that res ipsa loquitur should not be applied where one who had joint control over the instrumentality of the accident—the other store owner—was not joined as a defendant. After a retrial the plaintiff appealed to the Court of Appeals, which reversed the decision of the appellate division and held that each store owner had a separate duty to maintain the board and that the shared or dual duty with respect to the board permitted the application of res ipsa loquitur against either or both owners. Thus, according to the Court of Appeals, it was not improper for the court in the first trial to permit the application of res ipsa loquitur against a single defendant. In *Inouye*, by contrast, the surgeon did not share responsibility with the manufacturer for the manufacture of the wire or with the hospital for storage of the wire.[7]

Here, as Judge CERCONE points out, Dr. Beittel admitted that he had the responsibility to preserve the patient neurologically during the surgical procedures. There was also expert testimony that as the operating physician, Dr. Beittel had a duty to monitor the positioning of the plaintiff. Therefore, even if we assume that Dr. Rohrabaugh may have been a responsible cause for the injury, still Dr. Beittel also was a responsible cause. Dr. Rohrabaugh may have *shared* with Dr. Beittel the duty to maintain the plaintiff and monitor her position, but there is no evidence that Dr. Beittel was excused from his duty by Dr. Rohrabaugh's

7. As it is unnecessary to this decision, I do not consider the validity of the rule set forth in *Inouye* but only note that an argument can be made that it should be the defendant's responsibility to join any additional defendant he may believe to be liable.

presence. Accordingly, under the principle applied in *Corcoran*, which I should apply here, the jury could justifiably hold Dr. Beittel liable as the responsible cause of the plaintiff's injury, even though Dr. Rohrabaugh was not joined as a defendant.

I should affirm the decision of the court below.

HOFFMAN, Judge, dissenting:

I join the majority in its assertion that the doctrine of res ipsa loquitur may be applied to medical malpractice cases under appropriate circumstances. *Gilbert v. Korvette's Inc.*, 457 Pa. 602, 327 A.2d 94 (1974); Restatement (Second) Torts § 328D. *See Ybarra v. Spangard*, 25 Cal.2d 486, 154 P.2d 687 (1944). I concur in the majority's conclusion that the case at bar is not such a circumstance. Because plaintiff failed to join Dr. Rohrabaugh as a defendant, I believe that plaintiff cannot take advantage of the doctrine. In *Braccia v. Coca-Cola Bottling Co. of Philadelphia*, 398 Pa. 386, 157 A.2d 747 (1960) plaintiff was injured by an exploding bottle he bought from a retailer. Earlier that day, defendant bottler had delivered the bottle in question to retailer. Plaintiff sued only the bottler and not the retailer. Our Supreme Court held that by not suing the retailer jointly with the bottler, plaintiff could not take advantage of the doctrine of exclusive control in *Loch v. Confair*, 372 Pa. 212, 93 A.2d 451 (1953). As the Court explained, there is only "a tenuous distinction . . . between the doctrine of res ipsa loquitur and the exclusive control doctrine." *Id.*, 372 Pa. at 216, 93 A.2d at 453. In the instant case, I find no direct evidence that Dr. Beittel caused plaintiff's injury and nothing in the record to eliminate Dr. Rohrabaugh as an equally probable cause. Hence, it was sheer speculation on the part of the jury to find liability against Dr. Beittel. Moreover, to remand for new trial, as the majority mandates, is an exercise in judicial futility. Accordingly, I would grant Dr. Beittel a judgment n. o. v. *See Braccia, supra.*