**DeMarco v. Robertson**

440

*Bruce Ginsberg*, for plaintiffs.
*Frank Gerolamo, William Banton* and *Jennifer McPeak,* for defendants.

GOODHEART, *S.J.,* March 21, 2003—

## I. INTRODUCTION

In February of 1997, plaintiff Richard DeMarco was admitted to John F. Kennedy Memorial Hospital in Phila-

delphia with lower abdominal pain. He underwent a complete abdominal work-up, including a colonoscopy and two CAT scans, which revealed the existence of a mass in his abdomen.

Defendant John Robertson III M.D., who saw Mr. DeMarco during his hospitalization, told Mr. DeMarco that he believed the mass "could be cancerous," and recommended surgery to remove it.

In fact, the mass was *not* cancerous, and—according to Dr. Richard Goldstein, an expert witness called by the plaintiffs—Dr. Robertson should have realized that fact long before he performed the surgery. Dr. Goldstein stated that he formed that opinion because (a) biopsy results from the February colonoscopy came back negative for cancer, (b) by March 26, 1997, as noted by Dr. Robertson, Mr. DeMarco's symptoms had largely resolved, and (c) a follow-up CAT scan, performed on March 21, 1997 (which Dr. Robertson reviewed on April 4, 1997), had failed to show the presence of the mass at all.

According to Dr. Goldstein, the surgery was completely unnecessary, took far too long, and—because the physicians did not see to it that Mr. DeMarco's body was properly supported throughout the procedure—resulted in Mr. DeMarco suffering brachial plexus injuries, which caused numbness in both of his hands and arms, and pain in his neck, shoulders, arms and hands, all of which continue to the present day.

Even the defense's expert orthopedic surgeon, Dr. Karl Rosenfeld, stated that he believed that "the problem that evolved here was strictly from [the] positioning of [Mr. DeMarco's] arms, and the length of the surgery." (Rosenfeld deposition transcript, February 27, 2002, at

121-21). Though Dr. Rosenfeld declined to lay blame on any of the defendants specifically, it is clear that he, too, believed that improper monitoring of Mr. DeMarco's position on the operating table was the primary—if not the sole—cause of his injuries.

This case was tried over several days in March 2002 before the Honorable Legrome Davis and a jury. During the charging conference, with Judge Davis, all parties agreed to dismiss defendants JFK Hospital and Elizabeth Pokropski from the case.

The evidence against the remaining defendants, Dr. Robertson, Harry Thomas M.D. (a surgeon who assisted Dr. Robertson with the surgery) and Zeenee David-Mian M.D. (the anesthesiologist during the operation) was submitted to the jury, which returned a defense verdict, finding no negligence on the part of those defendants.

The plaintiffs then moved for post-trial relief, and upon Judge Davis' appointment to the federal bench, that motion was assigned to me for disposition.

By order dated February 3, 2003 (and docketed February 6, 2003), I granted the plaintiffs' motion and awarded a new trial; Dr. Robertson, Dr. Thomas and Dr. David-Mian each filed a timely notice of appeal.

## II. DISCUSSION

### A. *Res Ipsa Loquitur*

Because medicine is not an exact science, and the human body is not susceptible to precise understanding, the mere occurrence of an injury does not ordinarily give rise to a presumption of negligence on the part of any-

one, and an unfortunate outcome following medical treatment does not automatically bespeak malpractice. 82 A.L.R.2d 1262 at §2 (1962).

By the same token, however, the unusual character of a particular injury suffered while under a doctor's care *may* permit an inference to be drawn that the injury could not have occurred *unless* the doctor was negligent, even though the precise nature of the negligence cannot be shown. This is the principle known as res ipsa loquitur—literally, "the thing speaks for itself."

In *Gilbert v. Korvette's Inc.,* 457 Pa. 602, 327 A.2d 94 (1974), the Pennsylvania Supreme Court adopted the formulation of res ipsa loquitur found in Restatement (Second) of Torts §328D, as the law of the Commonwealth:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when—

"(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

"(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

"(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

"(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

"(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached." Restatement (Second) of Torts §328D (1965).

"The doctrine of [res ipsa loquitur] allows an inference of negligence to arise from competent evidence, on the theory that *in the ordinary course of events the injury complained of would not have occurred in the absence of negligence.*" *D'Ardenne by D'Ardenne v. Strawbridge & Clothier Inc.,* 712 A.2d 318, 321 (Pa. Super. 1998) (emphasis added), *appeal denied,* 557 Pa. 647, 734 A.2d 394 (1998), quoted in *Grandelli v. Methodist Hospital,* 777 A.2d 1138, 1147 (Pa. Super. 2001).

In its purest form, "[w]here there is no direct evidence to show cause of injury, and the circumstantial evidence indicates that the negligence of the defendant is the most plausible explanation for the injury, the doctrine applies." *D'Ardenne, supra* at 321; see also, Prosser & Keeton on the Law of Torts §40, at 257 (quoting *Roark v. St. Paul Fire & Marine Insurance Co.,* 415 So.2d 295 (La. App.1982)).

Though *Korvette's* was an escalator-injury case, the Superior Court subsequently held that res ipsa loquitur may also be applied in malpractice cases. *Jones v. Harrisburg Polyclinic Hospital,* 269 Pa. Super. 373, 410 A.2d 303 (1979). Still, "res ipsa loquitur is not often applied in medical malpractice actions; except in the most clear-cut cases, res ipsa loquitur may not be used in a medical malpractice action to abrogate the need for expert testimony or to shortcut the requirement that causation be established within a reasonable degree of medical certainty." *Grandelli, supra* at 1147. Res ipsa loquitur may best be described as a bridge over an unavoidable gap in proof of causation where the evidence otherwise points quite strongly to negligence on the part of the alleged tort-feasor; it is not a substitute for proof of negligence in its entirety.

Where a plaintiff proceeds under res ipsa loquitur, and once all three elements of section 328D have been satisfied, it is then for the court to decide whether "reasonable persons may reach different conclusions regarding the negligence of the defendant. . . ." *Leone v. Thomas,* 428 Pa. Super. 217, 630 A.2d 900 (1993). If so, the court must instruct the jury accordingly, and the jury must determine, whether or not to apply res ipsa loquitur, and thus infer negligence from the facts presented. *Id.*

Addressing the elements in reverse order, the evidence in this case makes it clear that Mr. DeMarco's brachial plexus injury occurred while he was on the operating table at JFK Hospital, undergoing surgery performed by Drs. Robertson and Thomas, with anesthesia administered by Dr. David-Mian.

Obviously, the physicians owed to Mr. DeMarco a duty of care sufficient to "protect [him] against preventable injuries which could reasonably occur during the performance of surgery." *Toogood v. Owen J. Rogal D.D.S., P.C.,* 764 A.2d 552 (Pa. Super. 2000), *alloc. granted, decision pending,* 568 Pa. 38, 791 A.2d 1154 (2002). Because brachial plexus injuries are not a normal (or even a common) result of properly performed colon surgery, the third element of section 328D has been satisfied.

Similarly, because Mr. DeMarco was unconscious during his surgery, the possibility that he contributed in any way to the occurrence of his injury has been eliminated, and because the operating room was under the exclusive control of the physicians while the surgery was being performed, it is equally unlikely that the injury resulted from an act or omission on the part of anyone *other than* one of the defendants. "It is precisely this type

of case, one in which an unconscious patient is unable to aver the specific conduct which caused her injury, in which res ipsa loquitur applies." *Jones, supra* at 379, 410 A.2d at 307. Thus, the second element of section 328D has also been established.

Finally, it appears from the evidence offered that Mr. DeMarco sufficiently established that his injuries were of a type that do not normally occur absent negligence to satisfy the first prong of section 328D.

Dr. Goldstein, the plaintiffs' expert witness on colon and rectal surgery, Scott Jaeger M.D., the plaintiffs' expert on hand and arm surgery, and Athole Jacobi M.D., the plaintiffs' anesthesiology expert, all stated that brachial plexus injuries do not occur from abdominal surgery in the absence of negligence. As cited above, even the defendant's expert orthopedic surgeon, Dr. Rosenfeld, blamed the plaintiff's injuries on the "positioning of his arms, and the length of the surgery . . ." and Dr. Robertson—who testified extensively in defense of his performance—offered no reasonable alternative explanation for Mr. DeMarco's injuries.

Historically, courts have had difficulty articulating precisely to which types of malpractice cases res ipsa loquitur may be applied. One recurring theme in the res ipsa loquitur cases is that injuries to healthy areas of an unconscious patient's body during surgery, particularly areas remote from the field of operation, tend to suggest that negligence was the cause, thus supporting a jury instruction on res lpsa loquitur, even in cases where direct proof of the specific act or acts of negligence is lacking. 82 A.L.R.2d 1262 at §19.

The extreme (and hypothetical) example of such remoteness of injury is where "a surgeon engaged in re-

moving a tumor from a patient's scalp would let his knife slip and cut off his patient's ear, or where he undertook to stitch a wound on his patient's cheek and by an awkward move would thrust his needle into the patient's eye. It would be a matter of common knowledge and observation that such things do not ordinarily attend the service of one exercising ordinary skill and experience in the work of surgery because they involve ulterior or extraneous acts or omissions, the judgment of which would not require scientific opinion." *Donaldson v. Maffucci,* 397 Pa. 548, 556, 156 A.2d 835 (1959).[1]

Here, sufficient evidence was introduced to allow a jury to reasonably infer that some aspect of the care provided to Mr. DeMarco by the defendants was responsible for the brachial plexus injury that he suffered during the colon resection.

Whether or not the jury would have chosen to apply the inference, of course, is unknown, but—after considering the record of this case carefully—I believe that the jury should have been given that opportunity.

B. *The Plaintiffs' Other Allegations of Error*

Because I believe that Judge Davis' refusal to charge the jury on res ipsa loquitur requires a new trial, I will not discuss the plaintiffs' other allegations of error in detail, except to note that it appears that the admission of portions of a learned treatise, specifically practice guide-

---

1. Even though *Maffucci* predates *Jones, supra,* in which the Pennsylvania Supreme Court first announced that res ipsa loquitur could be utilized in medical malpractice cases, this portion of *Maffucci* opinion remains instructive, even though much of the remainder may no longer accurately state the law.

lines promulgated by the American Society of Anesthesiologists, during the *direct* examination of defense expert Norig Ellison M.D. was improper, and could support a grant of a new trial, at least as to Dr. David-Mian alone.

Even though some of the ASA guidelines utilized by Dr. Ellison during his testimony *post-dated* the surgery herein at issue, it appears that defense counsel presented sufficient evidence, through Dr. Ellison's testimony, for the jury to find that compliance with the newer (and stricter) guidelines in effect in 2000 necessarily constituted compliance with the less-stringent guidelines that were in place in 1997.

Finally, a review of Dr. Ellison's testimony reveals that his expert opinion was indeed supported by sufficient evidence to make it admissible; in any event, the plaintiffs did not object to its admissibility at the time the opinion was given, and have thus waived this issue.

## III. CONCLUSION

I do not vacate a jury verdict lightly, particularly where—as here—I was not the trial judge.

As I stated at oral argument on the plaintiffs' post-trial motions, the res ipsa loquitur issue "jumped out at me . . ." while I was reading the record of this case. In fact, in "20-some years sitting on med mal cases, it's really the first time that I have seen the issue . . ." so clearly present.

Because I believe that the jury should have been charged on res ipsa loquitur, and because I believe such a charge, if given, could have altered the outcome here, I granted the plaintiffs a new trial, and I ask that the Superior Court affirm my decision accordingly.