437 A.2d 1134

Barry L. JONES and Mary Belle Jones, Appellants,

v.

HARRISBURG POLYCLINIC HOSPITAL, Charles R. Beittel, Jr., M.D., and P. McAloose, Appellees.

Supreme Court of Pennsylvania.

Argued May 19, 1981.

Decided Dec. 15, 1981.

466

Donald J. Farage, David M. Jakobi, Thaddeus J. Bartkowski, Philadelphia, James W. Evans, Harrisburg, for appellants.

Edward E. Knauss, III, Harrisburg, for Harrisburg Polyclinic Hosp.

Lee C. Swartz, Harrisburg, for P. McAloose.

James W. Evans, Harrisburg, for Charles R. Beittel, Jr.

Edward B. McDaid, Thaddeus J. Bartkowski, Philadelphia, for Barry L. & Mary Belle Jones.

Before ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

NIX, Justice.

This is an appeal from the order of the Superior Court[1] remanding the instant medical malpractice action for a new trial. A divided Superior Court[2] found that Mary Belle Jones and Barry L. Jones, plaintiffs below (appellants herein) failed to satisfy the requirements for the application of *res ipsa loquitur* and thus the trial court erred in allowing the jury to reach a verdict on that basis. We disagree.

On May 19, 1972, Mary Belle Jones underwent surgery at the Harrisburg Polyclinic Hospital to correct suspected gynecological problems on the advice of Dr. Charles R. Beittel, Jr. (appellee herein), Mrs. Jones' attending physi-

1. *Jones v. Harrisburg Polyclinic Hospital,* 269 Pa.Super. 373, 410 A.2d 303 (1979) (per Price, J.).

2. President Judge Cercone and Judge Spaeth dissented and would have upheld the verdict. Judge Hoffman dissented and would have granted judgment n. o. v. Former President Judge Jacobs did not participate in the consideration or decision of the case.

cian. The surgery consisted of three procedures: 1) a D & C;[3] 2) a laparoscopy;[4] and 3) a laparotomy.[5]

The D&C and laparotomy were performed by Dr. Beittel. The laparoscopy was performed by a Dr. Rohrabaugh,[6] although both doctors consulted during this procedure and, in fact, Dr. Beittel participated in the visual examination conducted through the laparoscope. A resident physician, Dr. Milan Chepko,[7] was present during part of the surgery and assisted Dr. Beittel. Patricia McAloose, a nurse-anesthetist, administered a general anesthetic and remained in the operating room during the course of the surgery. The three procedures employed required different positioning of the patient on the operating table. The D&C was performed with the patient in a flat (modified lithotomy) position with the operating table parallel to the floor and the patient's legs in stirrups. For the laparoscopy, the patient was placed in a Trendelenberg position in which the angle of the operating table is changed in order to have the body at an angle, with the head lowered. Subsequent to the laparoscopy, the patient's legs were removed from the stirrups and the table returned to a supine position parallel to the floor. After the initial incision for the laparotomy was made, the patient was again placed in a Trendelenberg position for further examination. At the end of the operation, prior to the closing of the incision, the patient was returned to a flat or supine position.

Throughout the entire surgical procedure Mrs. Jones' arm was placed on a board out from the operating table. The

3. Dilation and curettage involves the scraping of the interior of the womb.

4. A laparoscopy is a method of abdominal exploration employing a lighted tube inserted through a small incision below the umbilicus.

5. A laparotomy is the surgical opening of the abdomen, in this case to examine the reproductive organs.

6. Dr. Rohrabaugh was not named as a party to the action. This issue will be discussed *infra*.

7. Dr. Chepko was originally a named defendant but was subsequently dropped from the suit.

arm was placed in this position to facilitate the intravenous procedure.

After the surgical procedures were completed, Mrs. Jones was taken to the recovery room and then to her room. Upon regaining consciousness, Mrs. Jones experienced intense pain in her neck, left shoulder and left arm. Mrs. Jones was diagnosed as having suprascapular nerve palsy which was allegedly caused by the malpositioning of her arm on the arm board and the changes in the angle of the operating table during the course of the surgery. The record discloses that prior to the surgery, Mrs. Jones had no history of any problems with her back, neck or arm.

Mary Belle Jones and Barry L. Jones instituted a suit in trespass for medical malpractice against Dr. Beittel, the surgeon; Patricia McAloose, the nurse-anesthetist and Harrisburg Polyclinic Hospital. The jury returned a verdict against all three defendants in the amount of Fifty-six Thousand ($56,000) Dollars. Prior to taking testimony, plaintiffs settled with Nurse McAloose, Dr. Milan Chepko and Harrisburg Polyclinic Hospital for Twenty-five Thousand ($25,000) dollars and entered into a joint tortfeasor release.

The case against Harrisburg Polyclinic Hospital was predicated solely on *respondeat superior*, while the jury was instructed, *inter alia*, that the surgeon, Dr. Beittel, and the nurse-anesthetist, Patricia McAloose, could be responsible for their own respective negligence.

The theories of liability asserted against Dr. Beittel were those of lack of informed consent and negligence, through the application of the rule of *res ipsa loquitur*. The jury rejected the lack of informed consent theory in reaching its verdict against Dr. Beittel. Dr. Beittel filed post-verdict motions seeking a new trial, judgment n. o. v. and a molding of the verdict based on the joint tortfeasor release. These motions were denied by the lower court. On appeal, the Superior Court reversed granting Dr. Beittel a new trial. Cross-appeals were filed by both Beittel and the Joneses. By agreement, the Joneses were designated appellants and Beittel, appellee.

The issues presented on appeal are: 1) whether *res ipsa loquitur* is applicable in medical malpractice cases; 2) if issue no. 1 is answered in the affirmative, whether the evidence was sufficient as a matter of law to support a verdict for appellants on the basis of *res ipsa loquitur*; and finally 3) whether pursuant to the joint tortfeasor's release, the verdict against Dr. Beittel was properly reduced by one half.

In *Gilbert v. Korvette's*, 457 Pa. 602, 327 A.2d 94 (1975), this Court adopted the Restatement (Second) of Torts § 328D formulation of *res ipsa loquitur*. Section 328D provides:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

Restatement (Second) of Torts § 328D (1965).

Through the adoption of section 328D we rejected our earlier doctrines which combined substantive and procedural concerns with the evidentiary question of the propriety of inferring negligence from the particular circumstances.[8] By the adoption of Restatement (Second) of Torts § 328D, we provided a rule that addressed exclusively the evidentiary concerns to be considered in determining the propriety of

---

**8.** Previously our law in this area had three theories, one entitled "res ipsa loquitur," the second entitled "exclusive control" and the third was an untitled simple circumstantial evidentiary theory.

the proposed inference. In *Gilbert* we embraced the view that *res ipsa loquitur* is neither a rule of procedure nor one of substantive tort law. We stressed that it was only a shorthand expression for circumstantial proof of negligence—a rule of evidence. *Id.,* 457 Pa. at 611, 327 A.2d at 99.

Prior to our decision in *Gilbert,* the courts of this Commonwealth suggested that those theories relating to presumed negligence might not be applicable in medical malpractice cases. The general rule was that medical negligence should not be presumed or inferred from the mere happening of an accident or an unfortunate result. *Nixon v. Pfahler,* 279 Pa. 377, 124 A. 130 (1924); *Stemons v. Turner,* 274 Pa. 228, 117 A. 922 (1922). It was believed the plaintiff should be required to prove by expert testimony that the doctor was negligent in that the procedures employed were not in accord with standard medical practice. Fala, *The Law of Medical Malpractice in Pennsylvania,* 36 U. of Pitt.L. Rev. 203, 220 (1974).

However, prior law did in fact relieve plaintiff of the responsibility of offering medical testimony where the negligence of the physician was so obvious that it would be ascertained by the layman.[9] "The only exception to this otherwise invariable rule is in cases where the matter under investigation is *so simple,* and the lack of skill or want of care *so obvious,* as to be within the range of the ordinary experience and comprehension of even nonprofessional persons." *Lambert v. Soltis,* 422 Pa. 304, 308, 221 A.2d 173, 175 (1966); *Demchuk v. Bralow,* 404 Pa. 100, 104, 170 A.2d 868, 871 (1961); *Robinson v. Wirts,* 387 Pa. 291, 296, 127 A.2d 706, 710 (1956) (emphasis in original).

▇ With this background we must first consider the propriety of employing section 328D in medical malpractice cases. One commentator has explained the early reluctance

---

**9.** *See e.g. Smith v. Yohe,* 412 Pa. 94, 94 A.2d 167 (1963); *Hodgson v. Bigelow,* 335 Pa. 497, 7 A.2d 338 (1939); *Davis v. Kerr,* 239 Pa. 351, 86 A. 1007 (1919); *Dux v. Shaver,* 105 Pa.Super. 344, 161 A. 481 (1932).

of courts to apply the inference of negligence to medical malpractice actions in the following manner:

> It was early thought that this doctrine could have no application to medical science, because there are so many intangibles and uncertainties involved that the occurrence of a bad result could never justify an inference of negligence, and that all features of medical treatment could be interpreted and judged by physicians only. Gradually, however..., the courts in most states now recognize that this doctrine does have its place in medical malpractice....

36 U. of Pitt.L.Rev. at 219.

Additionally, certain authorities recognized that the "conspiracy of silence" among physicians in which it was extremely difficult to procure one physician to testify as an expert against another, created grave injustices in cases where a patient lacked the requisite expert testimony to get his or her case to the jury.[10]

Section 328D is fashioned to reach all instances where negligence may properly be inferred and its applicability is not necessarily precluded because the negligence relates to a medical procedure. The section establishes, criteria for determining circumstances wherein the evidentiary rule of *res ipsa loquitur* may become operative in providing the inference of negligence. It is premised on a recognition that certain factual situations demand such an inference.

We are satisfied that expert testimony should no longer be a *per se* requirement in proof of negligence in all cases of alleged medical malpractice. Expert medical testimony only becomes necessary when there is no fund of common knowledge from which laymen can reasonably draw the inference or conclusion of negligence. Even where there is no fund of common knowledge, the inference of negligence should be permitted where it can be established from expert medical testimony that such an event would not ordinarily occur

10. D. Louisell & H. Williams, Medical Malpractice § 14.01, at 418–24 (1973); W. Prosser, Law of Torts, 277 (4th ed. 1971).

absent negligence.[11]  Restated, section 328D provides two avenues to avoid the production of direct medical evidence of the facts establishing liability: one being the reliance upon common lay knowledge that the event would not have occurred without negligence, and the second, the reliance upon medical knowledge that the event would not have occurred without negligence.

There is no longer a need to be reluctant to permit circumstantial proof in medical malpractice cases where the nature of the evidence provides the requisite reliability of the inference sought to be drawn.  When common law knowledge or medical evidence can be established that the event would not ordinarily occur without negligence, there is no basis for refusing to permit a jury to draw such an inference.

We have long recognized the "... law must be responsive to new conditions and to the persuasion of superior reasoning." *Griffith v. United Air Lines*, 416 Pa. 1, 23, 203 A.2d 796, 806 (1964).  In *Kaczkowski v. Bolubasz*, 491 Pa. 561, 421 A.2d 1027 (1980), we cited Mr. Justice Cardozo:

> [W]hen a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment. . . .  There should be greater readiness to abandon an untenable position when the rule to be discarded may not reasonably be

11.  Section 328D, comment d states:
   d.  *Basis of conclusion.*  In the usual case the basis of past experience from which this conclusion may be drawn is common to the community, and is a matter of general knowledge, which the court recognizes on much the same basis as when it takes judicial notice of facts which everyone knows.  It may, however, be supplied by the evidence of the parties;  and expert testimony that such an event usually does not occur without negligence may be essential to the plaintiff's case where, as for example in some actions for medical malpractice, there is no fund of common knowledge which may permit laymen reasonably to draw the conclusion.  On the other hand there are other kinds of medical malpractice, as where a sponge is left in the plaintiff's abdomen after an operation, where no expert is needed to tell the jury that such events do not usually occur in the absence of negligence.

supposed to have determined the conduct of the litigants, and particularly when in its origin it was the product of institutions or conditions which have gained a new significance or development with the progress of the years. Cardozo, *The Nature of the Judicial Process,* 150–51 (1921).[12]

It cannot be overemphasized that "a court has a responsibility to the citizenry to keep abreast of changes in our society." *Kaczkowski v. Bolubasz, supra,* 491 Pa. at 572, 421 A.2d 1027.

The need for an inference of negligence is especially obvious in the situation where a patient submits himself or herself to the care and custody of doctors and nurses, is rendered unconscious, and receives some injury from instrumentalities used or procedures employed in his or her treatment.

" ... [W]ithout the aid of the doctrine a patient who received permanent injuries of a serious character, obviously the result of someone's negligence, would be entirely unable to recover unless the doctors and nurses in attendance voluntarily chose to disclose the identity of the negligent person and the facts establishing liability. ... " *Ybarra v. Spangard,* 25 Cal.2d 486, 490, 154 P.2d 687, 689 (1944).

■ The next question to be resolved is whether section 328D was properly applied under the evidence in the instant case. There is no serious dispute that section 328D(1)(a) and (1)(c) are satisfied here. The existence of an " ... event ... which ordinarily does not occur in the absence of negli-

---

**12.** *Cf. Azzarello v. Black Bros. Co., Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978). We furthered the principle of responsiveness to new conditions and superior reasoning in the orderly development of the law when we said:

The development of a sophisticated and complex industrial society with its proliferation of new products and vast changes in the private enterprise system has inspired a change in legal philosophy from the principle of caveat emptor which prevailed in the early nineteenth century market place to the view that a supplier of products should be deemed to be "the guarantor of his products' safety" *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 32, 319 A.2d 903, 907 (1974).

gence" required under 328D(1)(a) is conceded. Suprascapular nerve palsy does not ordinarily occur during gynecological procedures as were employed on Mrs. Jones in the absence of negligence. The testimony of Dr. Beller to that effect was uncontradicted. Likewise, section 328D(1)(c) is virtually conceded by appellee, who does not assert the claimed negligence is beyond the scope of his duty to plaintiffs.

However, it is contended that the requirement of 328D(1)(b), "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence," has not been met. Dr. Beittel asserts that the record fails to disclose sufficient evidence as a matter of law to eliminate Dr. Rohrabaugh as an "other responsible cause." In essence, Dr. Beittel argues that it is equally likely the injury occurred during the laparoscopy procedure which Dr. Rohrabaugh performed. Dr. Beittel then concludes appellants failed to sufficiently eliminate other responsible causes as required by section 328D(1)(b).

Although Dr. Rohrabaugh did perform one of the three procedures, Dr. Beittel was present and even participated in the laparoscopy. Moreover, Dr. Beittel admitted that he was responsible for the patient "neurologically" throughout the entire operation. At best, all that can be said is that during the laparoscopy Dr. Beittel and Dr. Rohrabaugh shared joint responsibility for the patient's proper positioning on the operating table.

Under the teaching of *Gilbert, supra*, the critical inquiry as to whether "other responsible causes are sufficiently eliminated by the evidence" is whether a particular defendant is the *responsible cause* of the injury. "Responsibility, of course, may be shared by two or more defendants." *See* W. Prosser, The Law of Torts (4th ed.) § 39. "Consequently, if *responsibility* is vested in and shared by two or more parties, each may be subject to liability. . . ." 457 Pa. 602, 614–615, 327 A.2d 94, 101 (1974). [Emphasis in original].

In furtherance of his position, Dr. Beittel contends that the failure of appellants to join Dr. Rohrabaugh constitutes

a fatal flaw to the application of section 328D, *citing Spannaus v. Otolaryngology Clinic*, 308 Minn. 334, 242 N.W.2d 594 (1976). In *Spannaus*, a patient was injured during the course of an operation for the removal of vocal cord nodules. The patient's head and neck had been hyperextended. A malpractice action was instituted against the surgeon, nurses and hospital. The plaintiff did not join the anesthesiologist who participated in the operation. The expert testimony offered did not include an opinion the injury does not ordinarily occur during that type of surgery in the absence of negligence. The trial court entered a judgment for defendants and the plaintiff appealed. The Supreme Court of Minnesota applied that state's version of *res ipsa loquitur* and affirmed the lower court. It held the plaintiff had failed to establish one of the prerequisites of the doctrine under Minnesota law; i.e., the injury "must be caused by an agency or instrumentality within the exclusive control of the defendant."

*Spannaus* was decided without any reference to section 328D and turned on (1) the plaintiff's failure to establish a prima facie case of negligence [13] and (2) the Minnesota "exclusive control doctrine." [14] *Spannaus* is not persuasive in the instant case because of the difference in proof offered as well as the substantive law applied. Although there may be superficial resemblances, *Spannaus* is inherently different and clearly distinguishable.

■ In essence, appellee argues, and the Superior Court found, that where another party *might* also be a responsible cause, there is insufficient elimination of such a possible "other responsible cause" to comply with section 328D(1)(b).

**13.** The experts in that case merely speculated as to causation and, *more importantly*, did not indicate the injury ordinarily would not have occurred in the absence of negligence.

**14.** "Exclusive control" in Pennsylvania has been termed "a unique sibling of res ipsa loquitur" by Mr. Justice Roberts in *Gilbert v. Korvette's, supra*, 457 Pa. at 608, 327 A.2d 94. With the adoption of section 328D in this jurisdiction we need no longer be concerned with the technical differences between the former theories of *res ipsa loquitur* and "exclusive control."

This position, if adopted, would nullify the section and fly in the face of *Gilbert.* Under section 328D(1)(b) there may be joint responsibility.[15] Yet the Superior Court's reasoning leads into the fallacy that where the injury may be the responsibility of more than one party, the plaintiff must eliminate the "responsible cause" of one in order for the requirements of section 328D(1)(b) to be met as to the other.[16] Such a position precludes joint responsibility. This is patently inapposite to the intent of the section and the teaching of *Gilbert.*

**15.** *See Gilbert v. Korvette's, supra*; Restatement (Second) of Torts § 328D, comment g (1965):

> *Defendant's exclusive control.* The plaintiff may sustain this burden of proof with the aid of a second inference, based on a showing of some specific cause for the event which was within the defendant's responsibility, or a showing that the defendant is responsible for all reasonably probable causes to which the event can be attributed. Usually this is done by showing that a specific instrumentality which has caused the event, or all reasonably probable causes, were under the exclusive control of the defendant. Thus the responsibility of the defendant is proved by eliminating that of any other person.
>
> It is not, however, necessary to the inference that the defendant have such exclusive control; and exclusive control is merely one way of proving his responsibility. *He may be responsible, and the inference may be drawn against him, where he shares the control with another*, as in the case of the fall of a party wall which each of two landowners is under a duty to inspect and maintain. He may be responsible where he is under a duty to the plaintiff which he cannot delegate to another, as in the case of a landlord who leases premises dangerous to persons on the public highway, which his tenant undertakes to maintain. He may be responsible where he is under a duty to control the conduct of a third person as in the case of a host whose guests throw objects from his windows. It may be enough that the defendant was formerly in control, at the time of the probable negligence, as in the case of a beverage bottler whose product poisons the consumer, when there is sufficient evidence to eliminate the responsibility of intermediate dealers. *Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a res ipsa loquitur case.* The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against. (Emphasis added).

**16.** As Judge Spaeth aptly stated in his dissent, *Jones v. Harrisburg Polyclinic Hospital*, 269 Pa.Super. 373, 388, 410 A.2d 303, 309 (1979): "I should not force the plaintiff to pick one person and try to eliminate all the others."

In the instant case, both Dr. Beittel as well as plaintiff's expert testimony established that Dr. Beittel had a duty to preserve the patient neurologically and to monitor her positioning throughout the entire operation. This duty was an independent one owed by Dr. Beittel to Mrs. Jones and continued to exist even during the time that Dr. Rohrabaugh performed the laparoscopy.

■ Moreover, in actions for a tort committed by several persons jointly, the plaintiff may sue all of them jointly, but he or she is not compelled to do so;  he or she may sue any of them, and the non-joinder of others may not be pleaded as an objection to the suit.  *See* 2 Standard Pennsylvania Practice, 371.  In the instant case, Dr. Beittel may have joined Dr. Rohrabaugh as an additional defendant if he believed that Dr. Rohrabaugh shared liability.

The evidence was sufficient to satisfy section 328D(1). We also conclude that the lower court was not in error in holding that the inference could reasonably be drawn by the jury, 328D(2), and that the jury properly determined such inference could be reasonably reached, 328D(3).

■ Finally, Dr. Beittel argues that pursuant to the joint tortfeasor's release, the verdict against him must be reduced by two-thirds rather than one-half as molded by the trial judge.  We disagree.  The joint tortfeasor release was executed in accordance with the provisions of the Uniform Contribution Among Tortfeasors Act (U.C.A.T.A.) [17] prior to trial.  By its terms, appellants, for the consideration of $25,000, released defendants, Harrisburg Polyclinic Hospital and Patricia McAloose.  Beittel argues that there were two other joint tortfeasors (Polyclinic Hospital and Patricia McAloose) and hence each party should be liable for a one-third share of the verdict.  However, when contribution among joint tortfeasors is sought, a distinction between primary and derivative liability is recognized for purposes of

17.  Act of July 19, 1951, P.L. 1130, §§ 1 *et seq.*, 12 P.S. §§ 2082 *et seq.*; repealed, Act of April 28, 1978, P.L. 202, No. 53, § 2(a);  substantially re-enacted;  Act of July 9, 1976, P.L. 586, No. 142, § 2, eff. June 27, 1978, 42 Pa.C.S.A. §§ 8321 *et seq.*

determining the pro rata share of contribution among parties found liable. In the instant case, the hospital was not charged with direct negligence. Its liability was predicated upon *respondeat superior* as the employer of the nurse-anesthetist McAloose.

In *Parker v. Rodgers*, 125 Pa.Super. 48, 189 A. 693 (1937), the Superior Court held that where an employee is found negligent, the employer's share, for the purpose of contribution, is identical to the employee's in that the employer has not committed the tort but was liable solely on the basis of *respondeat superior.*

In *Parker*, plaintiff brought an action in trespass against Marion Rodgers, Robert Glenzinger and Margaret Paugh to recover damages for an injury sustained in a collision between an automobile owned and operated by Rodgers and an automobile owned by Mrs. Paugh and driven by Glenzinger, an employee of Mrs. Paugh. A trial resulted in a verdict of $6,000 for plaintiff against the three defendants. Mrs. Paugh's negligence was predicated upon *respondeat superior.*

Rodgers' insurance carrier, which paid half of the judgment, obtained contribution from Glenzinger and Paugh on the theory that as among the three defendants, each was liable for one-third of the judgment. In rejecting this argument, the Superior Court held that Mrs. Paugh and her driver were liable for only one-half of the judgment.

> ... Rodgers and Glenzinger were the persons who committed the actual tort or wrong as distinguished from a legal tort. Mrs. Paugh was not present when the accident occurred, but was only liable as the master of her servant and driver, Glenzinger. It was not alleged nor shown that she was personally and directly guilty of any trespass or was responsible by reason of anything which she personally did or omitted to do. Her responsibility even to the plaintiff did not arise from any act which was on her part morally wrong, but her liability was based on a legal principle that has become a part of the positive law of the Commonwealth that the negligence of a servant acting

within the scope of his employment is imputed to the master. We agree with the learned judge of the court below that Mrs. Paugh's liability being purely derivative and because she and the driver are responsible to the plaintiff for one and the same act of negligence committed by the servant alone, both reason and justice require it to be held that Rodgers is not entitled to contribution since he has paid but one-half of the judgment.

*Id.*, 125 Pa.Super. at 52–53, 189 A. at 695–696.

In *Nationwide Mutual Insurance Co. v. Philadelphia Electric Co.*, 443 F.Supp. 1140 (E.D.Pa.1977), the District Court, applying the Pennsylvania Uniform Contribution Among Tortfeasors Act, adopted the Superior Court's rationale in *Parker, supra,* and held it applicable in interpreting the statute. While *Parker* predated the U.C.A.T.A., its reasoning is consistent with that statute's purpose and is thus still good law. *See also, Russell v. United States*, 113 F.Supp. 353 (M.D.Pa.1953). Thus, since Polyclinic Hospital's liability has been predicated upon *respondeat superior* resulting from the negligence of Patricia McAloose, the verdict against Dr. Beittel was properly reduced by one half.

The Order of the Superior Court is reversed and the Judgment of the Court of Common Pleas of Dauphin County is reinstated.

ROBERTS, J., filed a concurring opinion in which WILKINSON, J., joined.

O'BRIEN, J., did not participate in the consideration or decision in this case.

ROBERTS, Justice, concurring.

Existing case law of this Court requires the reversal of the order of the Superior Court and the reinstatement of the trial court's judgment. Because plaintiff has produced expert testimony tending to show that the injury sustained here does not usually occur without negligence, the majority's discussion of the need generally for expert testimony in medical malpractice cases is unnecessary. Here, the sole

dispute is whether plaintiff sufficiently eliminated the existence of "other responsible causes" as required by Restatement (Second) of Torts § 328D(1)(b) (1965) and *Gilbert v. Korvette's, Inc.*, 457 Pa. 602, 327 A.2d 94 (1974). Plaintiff's evidence permits the conclusion that Dr. Beittel actively participated throughout the entire operation, including the period when Dr. Rohrabaugh performed the laparoscopy. Thus, this is not a case where there "is no doubt" that the negligence of Dr. Rohrabaugh was equally probable. See Restatement (Second) of Torts, supra, at Comment f. Rather, it is a case where the jury reasonably could conclude that Dr. Beittel was at all times the "responsible cause" of the injury.

WILKINSON, J., joins in this concurring opinion.