Carol **LEVY**

v.

**THOMAS JEFFERSON UNIVERSITY and Thomas Jefferson University Hospital and Lucas J. Martinez, M.D.**

Civ. A. No. 81–0161.

United States District Court, E.D. Pennsylvania.

Aug. 15, 1983.

Catherine Miraglia Lecky, King of Prussia, Pa., for plaintiff.

A. Grant Sprecher, Philadelphia, Pa., for Thomas Jefferson University.

John J. Dautrich, Philadelphia, Pa., for Lucas J. Martinez, M.D.

### MEMORANDUM AND ORDER

HUYETT, District Judge.

This tort action was brought by plaintiff Carol Levy against defendants Thomas Jefferson University (University), Thomas Jefferson University Hospital (Hospital) and Lucas J. Martinez, M.D., a neurosurgeon who performed the medical procedure at issue in this case. Jurisdiction is based upon diversity of citizenship. Before me is defendant Martinez's motion for summary judgment joined in by defendants University and Hospital. For the reasons stated below, I will grant the motion.

In the spring of 1977, plaintiff began experiencing severe pain in the upper left portion of her face. In November, 1977, the plaintiff underwent cranial surgery for relief of the facial pain. The surgery did not relieve plaintiff's pain, nor did the various other methods of treatment she underwent following the 1977 operation.

On January 10, 1979, plaintiff was admitted to the Thomas Jefferson University Hospital, for the purpose of undergoing surgery to sever her fifth cranial nerve to relieve her facial pain. After discussions among the plaintiff, defendant Martinez and his associate Dr. Jewell L. Osterholm, it was decided that instead the plaintiff would undergo a neurosurgical procedure called a transcutaneous thermocoagulation of the left gasserian ganglion or a gasserian ganglion or a gasserian ganglion rhizotomy (retrogasserian rhizotomy). This procedure involves inserting a needle through the skin, placing it in the gasserian ganglion, raising the temperature of the needle, and thereby destroying nerve fibers. The procedure was performed by Dr. Martinez on January 18, 1979.

The parties agree that the intended purpose of this operation was to destroy nerve fibers of the first and second branches of the fifth cranial nerve, in order to anesthetize the upper left portion of the plaintiff's face. However, the parties disagree 1) whether the procedure caused plaintiff to suffer harm, and 2) whether the plaintiff was informed of all the material risks of the procedure.

With respect to the first issue, the plaintiff alleges that she suffered injuries relating to the fifth and seventh cranial nerves as a result of the January 18, 1979 rhizotomy procedure, which would not have occurred in the absence of negligence on the part of defendant Martinez. The defend-

ants do not deny that the plaintiff may now suffer fifth and seventh nerve damage but they contend that this damage resulted from a later operation that the plaintiff underwent in Pittsburgh on March 27, 1979. The Pittsburgh operation, which allegedly resulted in total paralysis of the left side of the plaintiff's face, is the subject of a separate suit in which the present defendants are not involved. Defendants further contend that plaintiff did not suffer seventh nerve damage at any time during her hospitalization at the defendant hospital. Moreover, defendant Martinez maintains that damage to the seventh nerve is not an indication of the negligent performance of a retrogasserian rhizotomy and that this will be his testimony at trial. The plaintiff, on the other hand, has indicated that she will call no expert witnesses, other than defendant Martinez to testify on this issue. Accordingly, the defendants move for summary judgment on the issue of negligent performance of the medical procedure arguing that Pennsylvania law requires that plaintiff introduce expert testimony which they contend plaintiff has conceded she will not do.

In response to the defendants' summary judgment motion plaintiff offers her own deposition testimony, allegedly showing that she suffered an "immediate loss of taste" following the rhizotomy procedure, and portions of the deposition of Dr. Norman J. Schatz, the physician who had referred the plaintiff to defendant Martinez, allegedly showing that taste is a seventh nerve function. Plaintiff also presents deposition testimony by Dr. Peter Janetta which the plaintiff contends shows that Janetta found seventh nerve damage on March 12, 1979, just prior to the Pittsburgh operation. Plaintiff contends that the combination of this testimony and the doctrine of *res ipsa loquitur* creates "a genuine issue as to the material fact of seventh nerve damage" which must be resolved at trial.

Pennsylvania has adopted the formulation of *res ipsa loquitur* in Restatement (Second) Torts § 328D. Under the Pennsylvania Supreme Court's interpreta-

tion of § 328D, *res ipsa loquitur* is not a rule of procedure nor of substantive law, but only a rule of evidence for circumstantial proof of negligence. *Gilbert v. Korvette,* 457 Pa. 602, 611, 327 A.2d 94, 99 (1975). Recently, the Pennsylvania Supreme Court reversed its longstanding position and for the first time allowed the application of *res ipsa loquitur* in a medical malpractice case. *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981). Previously, the rule in Pennsylvania had been that medical negligence would not be presumed or inferred merely from an accident or an unfortunate result. *Nixon v. Pfahler,* 279 Pa. 377, 124 A. 130 (1924). The plaintiff was required to prove the physician's negligence by expert medical testimony. In holding in the *Jones* case that the application of *res ipsa loquitur* is proper in medical malpractice actions, the Pennsylvania Supreme Court stated:

> We are satisfied that expert testimony should no longer be a per se requirement in proof of negligence in all cases of alleged medical malpractice. Expert medical testimony only becomes necessary when there is no fund of common knowledge from which laymen can reasonably draw the inference or conclusion of negligence. Even where there is no fund of common knowledge, the inference of negligence should be permitted where it can be established from expert medical testimony that such an event would not ordinarily occur absent negligence.

*Jones v. Harrisburg Polyclinic Hospital,* 437 A.2d at 1138.

Turning to the present case, it is clear and plaintiff readily admits that there is no existing fund of common knowledge regarding the retrogasserian rhizotomy procedure from which the average layman could draw inferences or conclusions of negligence. Therefore, to succeed at trial plaintiff has two alternatives. First, she can introduce expert medical testimony that Dr. Martinez negligently performed the procedure and caused plaintiff's alleged injury. Plaintiff admits that she has no expert oth-

er than Dr. Martinez. Dr. Martinez will not give the opinion plaintiff's case requires. See Martinez Affidavit, Ex. M. Second, to carry her burden, plaintiff can introduce expert medical testimony that the injuries plaintiff allegedly suffered as a result of the rhizotomy would not ordinarily occur unless the procedure had been performed negligently. Again plaintiff relies on Dr. Martinez to supply this opinion at trial. In his affidavit in support of this motion, Dr. Martinez has stated the opposite.

■ It is well-established that the party moving for summary judgment has the burden of demonstrating that there is "no genuine issue as to any material fact" and therefore he is entitled to summary judgment as a matter of law. The movant is held to a stringent standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 848 (3d Cir.1974); *United States ex rel. Jones v. Rundle*, 453 F.2d 147, 150 (3d Cir. 1971). When the facts are unclear, any doubt as to the existence of a genuine issue of material fact will be resolved against the movant. *Smith v. Pittsburgh Gage & Supply*, 464 F.2d 870 (3d Cir.1972). Moreover, because the burden is placed on the moving party, any evidence presented to the court will always be construed in favor of the party opposing the motion and that party is given the benefit of all favorable inferences that can be reasonably drawn from it. *Harold Friedman, Inc. v. Thorofare Markets, Inc.*, 587 F.2d 127, 131 n. 7 (3d Cir.1978). In addition, any facts asserted by the party opposing the motion, if supported by affidavits or other evidentiary material, are regarded as being true. *Scott v. Plante*, 532 F.2d 939 (3d Cir.1976). However, notwithstanding the above considerations, "if the movant makes out a prima facie case that would entitle him to a directed verdict if uncontroverted at trial, summary judgment will be granted unless the party opposing the motion offers some competent evidence that could be presented at trial showing that there is a genuine issue as to a material fact." See C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2727, at 536 (1973).

■ In this case, plaintiff has failed to set forth a response to defendant Martinez's sworn affidavit that he was not negligent in performing the procedure and that he would not testify that the plaintiff's alleged injuries would not ordinarily occur in the absence of negligence. Presumably plaintiff's theory is that summary judgment is improper because she must be given the opportunity at trial to prove the facts on which her negligence claim is based. Plaintiff apparently would attempt to do this by cross-examining defendant Martinez and introducing medical treatises into evidence, pursuant to Federal Rules of Evidence 611(c) and 803(18) respectively.

However, plaintiff's argument fails to take into account the fact that summary judgment is only improper where a genuine issue of facts exists. Plaintiff has failed to set forth facts, supporting documents, or any other competent admissible evidence which would tend to put the crucial issues in dispute. Plaintiff offers deposition testimony which could be used to show that damage to her seventh cranial nerve occurred as a result of the rhizotomy performed by defendant Martinez, and not, as the defendants contend, the subsequent operation in Pittsburgh. However, plaintiff has failed to state how she will fulfill the requirement of showing by expert testimony that, in the absence of negligence, seventh cranial nerve damage would not ordinarily occur during a retrogasserian rhizotomy. It is not enough for the plaintiff to contend that this will be established at trial by cross-examination of the expert defendant, Dr. Martinez where Martinez has sworn in his affidavit that he does not believe that seventh nerve damage is an indication of negligent performance of a rhizotomy. Thus, plaintiff has failed to meet the burden of establishing that there are genuine questions of material fact, regarding her negligence claim, which should be determined at trial. Defendants' motion for summary judgment will be granted in respect to plaintiff's negligence claim.

Plaintiff also seeks to recover based upon an alleged lack of informed consent by her to the procedure. Under Pennsylvania law the issue to be decided in a case alleging a lack of informed consent to a medical procedure is: "whether the physician disclosed all those facts, risks, and alternatives that a reasonable man in the situation which the physician knew or should have known to be the plaintiff's would deem significant in making a decision to undergo the recommended treatment." *Cooper v. Roberts,* 220 Pa.Super. 260, 286 A.2d 647, 650 (1971).

■ Plaintiff alleges that she was not informed of the types and risks of the rhizotomy. In response to the defendants' motion, she alleges that she was not informed that she could lose her corneal reflex, the ability to tear, or the feeling in the lower left side of her face. Further she alleges that she was not informed of the effect these losses would have on her life. Finally, she alleges that she was not informed of the possibility of impairment of her ability to swallow or salivate. Final Pre-trial Order ¶¶ 5–8, at 7–8. The defendant disputes all of these allegations. *Id.* ¶¶ 7 & 8, at 11–12.

At trial plaintiff would have the burden of proving what the actual risks of the procedure are which a reasonable person in her position would have wanted to know. Only after establishing these risks would she go on to prove, presumably by her own testimony, that she was not informed of them. Plaintiff is not entitled to hypothesize risks and then testify that she was not informed of them. The only expert testimony in the record of the risks of this procedure is Dr. Martinez's. He has stated the risks of this procedure to be loss of corneal reflex and loss of sensation in the upper left side of the face. Despite the denials in plaintiff's memorandum in opposition to this motion, the plaintiff has stipulated in the Final Pre-trial Order that plaintiff was warned of both of these risks. Final Pre-trial Order ¶¶ 29 & 30, at 5–6. With respect to the other alleged risks of the procedure there is no expert medical evidence that they are risks. In the ab-

sence of expert medical evidence that these are actual risks, the plaintiff has no basis to argue that she should have been informed of these risks but was not. Thus, there is no genuine issue of material fact for trial since the parties agree that the plaintiff was informed of all risks for which there is a basis in the record.

For the reasons stated above, the defendants' motion will be granted.