## Leonard v. St. Joseph's Hospital

*Carol Nelson Shepherd,* for plaintiff.
*Frederick J. Fanelli,* for defendant hospital.
*Joseph P. Mellody, Jr.,* for defendant physician.

PODCASY, *J.,* August 22, 1984—This is a medical malpractice case in which defendants seek entry of summary judgment in their favor.

According to plaintiff's complaint, his wife, Lydia Leonard, was admitted to St. Joseph's Hospital in Hazleton, Pa. on April 15, 1981 for the purposes of childbirth, under the care of Ki Bum Lee, M.D., a specialist in obstetrics and gynecology. She delivered healthy twin babies on April 16, 1981, and died in her hospital bed four days later in the early morning hours of April 20, 1981, an apparent victim of cardiac arrest.

Plaintiff claims that Lydia Leonard's death resulted from defendants' negligence in failure to promptly and properly treat his wife, failure to maintain close observation of her condition, failure to do a complete and adequate physical examination, fail-

ure to possess the proper skills, experience, and techniques for treating, caring for, and monitoring her, failure to properly obtain her past medical history, failure to properly bring to bear what medical skills they possessed, and failure to conform to accepted medical standards. Recovery is sought in two trespass counts, one for wrongful death, and the other for recovery under the Pennsylvania Survival Act.

Defendant Lee's answer to plaintiff's complaint admits that Lydia Leonard was at times under his care and supervision and at times under the care and supervision of the hospital itself after her admission to St. Joseph's Hospital on April 15, 1981, but denies that her death resulted from any negligence on his part. No answer was filed by St. Joseph's Hospital, but the essential allegations of negligence on its part are deemed to have been denied in accordance with the Rules of Civil Procedure.

Following the filing of plaintiff's complaint and defendant Lee's answer thereto, counsel for both parties served a number of notices of the proposed taking of depositions; and there are in the file, as part of the record, depositions taken of six witnesses by Dr. Lee's counsel, these all being witnesses who were expected to appear at trial as witnesses for plaintiff. In addition, plaintiff addressed interrogatories to Dr. Lee, and both defendants addressed interrogatories to plaintiff, the answers to these various interrogatories being a matter of record. In answering the question of whether he intended to call any expert witnesses, plaintiff first stated that he might "possibly" call a medical expert witness, adding that, "if held to be necessary, testimony will be presented that the event which occurred in this case does not ordinarily occur in the absence of negligence." When pressed by supple-

mental interrogatories to provide a more explicit answer to this question, plaintiff stated that he had not yet made a determination whether any medical experts would testify on his behalf at trial.

Being dissatisfied with plaintiff's seeming evasiveness on the matter of identifying the medical experts whom he would call, defendants sought sanctions against plaintiff, as a result of which two separate orders of court have been entered. These orders were entered on November 14, 1983 and December 8, 1983, respectively, and each order required plaintiff to specifically answer the interrogatories relating to medical expert witnesses within a specified period of time on pain of being precluded from introducing any expert medical testimony at trial. Plaintiff failed to comply with either order and is therefore now precluded from offering such testimony. Pa.R.C.P 4019 (c). Gallegor v. Felder, 329 Pa. Super. 204, 478 A.2d 34 (1984).

Motions for summary judgment were filed on behalf of both defendants after expiration of the time limits allowed plaintiff for providing an answer to the interrogatories regarding expert medical testimony, contending that, without expert medical testimony, plaintiff's case must necessarily fail. It is these two motions for summary judgment which are now before us.

In Gilbert v. Korvette's, 457 Pa. 602, 327 A.2d 94 (1974), the Pennsylvania Supreme Court adopted the Restatement (Second) of Torts, §328D, formulation of res ipsa loquitur. That section provides:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when:

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached."

The court further held in Gilbert that res ipsa loquitur is not a rule of procedure, or of substantive tort law, but merely a shorthand expression for circumstantial proof of negligence.

Six years after the Gilbert decision our Supreme Court elaborated further on the applicability of the res ipsa loquitur doctrine to medical malpractice cases, stating as follows in Jones v. Harrisburg Polyclinic Hospital, 496 Pa. 465, 437 A.2d 1134 (1981), at pages 472 and 1138 of the reports:

"We are satisfied that expert testimony should no longer be a per se requirement in proof of negligence in all cases of alleged medical malpractice. Expert medical testimony only becomes necessary when there is no fund of common knowledge from which laymen can reasonably draw the inference or conclusion of negligence. Even where there is no fund of common knowledge, the inference of negligence should be permitted where it can be established from expert medical testimony that such an event would not ordinarily occur absent negligence. Restated, section 328D provides two avenues to avoid the production of direct medical evidence of

the facts establishing liability: one being the reliance upon common lay knowledge that the event would not have occurred without negligence, and the second, the reliance upon medical knowledge that the event would not have occurred without negligence. 496 Pa. at 472-73, 437 A.2d at 1138."

Our Supreme Court, in the Jones case, went on to refer to Comment (d) under section 328D of the Restatement (Second) of Torts, explaining the manner of functioning of the res ipsa loquitur rule in medical malpractice cases, observing that, whereas in the usual case the conclusion that the injury or death would not have occurred in the absence of negligence is based on past experience common to the community, and a matter of general knowledge, the conclusion may also be based on the evidence of the parties.

In the Jones case, plaintiffs presented uncontroverted expert medical testimony to the effect that the harm suffered by plaintiff would not ordinarily have occurred in the absence of negligence. Here plaintiff is precluded from offering at trial any medical expert witnesses to testify in support of his case.

In applying Restatement, §328D to the facts of the case before us, it is clear that the alleged acts of negligence set forth in plaintiff's complaint fall well within the scope of defendants' duty to plaintiff, and it is equally clear that other responsible causes for the death of Lydia Leonard are sufficiently eliminated, for defendant Lee, in his answers no. 7 and no. 19 to plaintiff's interrogatories, states that he does not contend that any responsible causes exist attributable to decedent, to plaintiff, or to others. Our task, therefore, is to determine whether, based on the entire record now before us, an inference might reasonably be drawn by a jury that the death

of Lydia Leonard would not have occurred in the absence of one or more of the acts of negligence attributed to defendants by the allegations of plaintiff's complaint.

The depositions of plaintiff and of a number of friends and relations of plaintiff's decedent, are a matter of record. These depositions indicate that plaintiff is prepared to offer evidence at trial that his wife was a perfectly normal, healthy woman in her mid-30's with no history of heart trouble, weighing about 130 pounds prior to the pregnancy which led to the birth of twins just four days before her death. Further testimony would indicate that in the latter stages of pregnancy she had gained weight to about 160 pounds, this being an increase of over 23 percent in body weight, and that she suffered from severe edema. The description of decedent's appearance prior to and while in the hospital was variously given as a woman with "huge hands", "legs unbelievably huge", "the biggest I ever saw a woman", big like a "balloon", with legs like "balloons." She was described as having a rash so bad that it caused her to cry daily just prior to admission to the hospital, for which defendant Lee had prescribed Calamine lotion, telling her to "put up with it", and not to be a hypochondriac. Apart from the weight, edema, and rash, decedent was described as being "excessively tired" after her childbirth. She is described as being exhausted, pale, and grossly short of breath, forced to walk with a slow shuffle, as if walking were a struggle.

One witness testified on deposition that decedent, while in the hospital following childbirth, had complained to her that she had a "pain in the chest" which felt to her as if she might have indigestion. A number of witnesses deposed stated that they had seen no doctors or nurses coming into the hospital

room to attend to or monitor decedent's condition in the days immediately preceding her death, and plaintiff testified that he felt that not enough tests had been done to determine his wife's condition.

Defendants' contention is that Lydia Leonard died of a very unusual condition known as "postpartum cardiomyopathy", which is described in Exhibit "A" to defendant St. Joseph's Hospital's motion for summary judgment as "the end stage which may have many different causes which result in a dilated heart with varying degrees of interstitial fibroses, chronic nonspecific inflammation in the absence of significant coronary artery and valvular disease." Exhibit "B" to said motion for summary judgment indicates that the heart condition was diagnosed as "hypertrophy", meaning that the heart had grown to an abnormally large size. This exhibit, being the autopsy report of Julius Foldes, M.D., goes on to state that the muscle fibers of the heart appeared to have undergone considerable atrophy to the point of disappearance, and ends by concluding that "there is apparently muscular involvement of this type in the trimester and, at times, postpartum stage of patients who deliver. I believe that we have been dealing with one of these unusual situations."

We feel that, under all of the circumstances shown by the record, a jury would be justified in drawing the inference from the testimony of plaintiff's witnesses and from the autopsy report and consultation report prepared by defendant St. Joseph's Hospital's own experts that the death of Lydia Leonard could have, and more probably than not would have been prevented, by proper testing and by proper postpartum monitoring of her condition. We see no need for plaintiff to rely exclusively on expert medical opinion. If the cause of death was

very unusual, as defendants contend, this in itself indicates that the death would not ordinarily have occurred in the absence of negligence. Defendants plan to take the position at trial that the condition of "postpartum cardiomyopathy" was something which suddenly came upon decedent without warning, and that no reasonable amount of testing or monitoring could have provided a warning that steps should be taken to guard against a sudden change for the worse in decedent's condition. Defendants are certainly entitled to present such a case to the jury, and if the jury believes that defendants' account is more probable than that of plaintiff, defendants will prevail. All this, however, relates to a question of affirmative defense, and matters of affirmative defense are not before us at this stage of the proceedings. At this stage it is incumbent on defendants to satisfy us that the entire record before us, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file, show that there is no genuine issue as to any material fact, and that defendants, as the moving parties, are entitled to judgment as a matter of law. Keating v. Zemel, 281 Pa. Super. 129, 421 A.2d 1181 (1980); Pa.R.C.P. 1035(b). Defendants have not satisfied us that such is the case.

## ORDER

It is hereby ordered, adjudged and decreed as follows:

(1) Defendants' motions for summary judgment are dismissed; and

(2) the prothonotary of Luzerne County is directed to mail notice of entry of this order to all counsel of record pursuant to Pa.R.C.P. 236.