**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BERNADETTE AND TRAVIS SNYDER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| MOUNT NITTANY MEDICAL CENTER, DR. SARA BARWISE, MD, DR. MICHAEL FEFFER, MD, DR. UPENDRA THAKER, MD | |
| | No. 1545 MDA 2016 |

Appeal from the Order Entered August 18, 2016
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2015-884

BEFORE:  BOWES, DUBOW, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                      **FILED MAY 26, 2017**

Bernadette and Travis Snyder appeal *pro se* from the August 18, 2010 order entering summary judgment against them in this medical malpractice action.  Summary judgment was granted because they failed to produce the report of an expert witness to establish that the defendants herein were negligent.  We affirm.

On February 26, 2015, the Snyders, acting *pro se*, instituted this medical malpractice action against Appellees Mount Nittany Medical Center, Dr. Sara Barwise, Dr. Michael Feffer, and Dr. Upendra Thaker.  They premised their right to recover upon the following allegations.  On March 1,

_____
*  Former Justice specially assigned to the Superior Court.

2013, Ms. Snyder, who had placenta previa,[1] underwent a scheduled caesarian section at the Mount Nittany Medical Center. The baby was safely delivered, but Ms. Snyder thereafter suffered cardiac arrest due to an amniotic fluid embolism. She was revived through the use of cardiopulmonary resuscitation and intubation.

The complaint continued as follows. After Ms. Snyder stabilized from the embolism, she began to suffer from a condition known as disseminated intravascular coagulation, which occurs when blood clots form inside blood vessels. During disseminated intravascular coagulation, the clots can use up the blood's clotting factors, which can lead to bleeding in other areas. Dr. Feffer placed a right internal jugular central line inside of Ms. Snyder's jugular vein to administer medication. Mount Nittany Medical Center personnel were unsuccessful in their attempts to stop Ms. Synder's bleeding, and transferred her to Geisinger Clinic ("Geisinger") in Danville, Pennsylvania.

The complaint indicated that personnel at Geisinger observed that Ms. Snyder's neck, face, and body, were swollen and concluded that the right internal jugular central line was not placed in the correct position. An x-ray confirmed the diagnosis, the line was removed and Ms. Snyder's condition

---

[1] *Placenta previa* is a condition where the placenta lies low in the uterus and partially or completely covers the cervix.

was stabilized. The Snyders averred that Ms. Snyder's intubation was prolonged due to the incorrectly placed internal jugular central line and that she continued to suffer side effects from these medical events.

In January 2016, the trial court issued a pre-trial conference order that required the parties to produce the reports of any expert witnesses whom they intended to call at trial by May 15, 2016. Appellees presented two expert witness reports, both of which indicated that Appellees did not deviate from the applicable standard of care in their treatment of Ms. Snyder. The Synders did not produce any report. At the May 15, 2016 pre-trial conference, the Snyders indicated that none would be forthcoming. Appellees thereafter moved for summary judgment. Appellees' motion was granted, and the action was dismissed. This timely appeal followed. The Snyders raise this position on appeal:

> Whether the Lower Court erred when it granted summary judgment in favor of Appellees Mount Nittany Medical Centre, Dr. Sara E. Barwise, Dr. Michael J. Feffer, and Dr. Upendra Thaker where a substantial amount of fact exists as to whether the Doctrine of *Res Ipsa Loquitur* applies in this case.

Appellants' brief at 5.

Initially, we set forth our standard of review when a trial court has granted summary judgment. This court can "reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." ***Truax v. Roulhac***, 126 A.3d 991, 996, (Pa.Super. 2015) (*en banc*) (citation omitted). Summary judgment is entered "only in those cases where the

- 3 -

record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Id***. (citation omitted). The question of "whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*[.]" ***Id***.

When the trial court, and, concomitantly, this Court, determines whether there is a genuine issue of material fact, we "must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." ***Id***. We resolve any "doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." ***Id***. (citation omitted).

In this case, the Snyders, as plaintiffs, bear the burden of proving the Appellees were negligent. If the party with the burden of proof does not present "sufficient evidence on an issue essential to his case and on which he bears the burden of proof," the moving party is entitled to summary judgment. ***Id***. at 997 (citation omitted). Hence, a plaintiff must produce evidence establishing the existence of a *prima facie* case that he has a cause of action, or the trial court properly can grant summary judgment against the plaintiff. ***Id***.

The Snyders accuse Appellees of medical malpractice, which "consists of a negligent or unskillful performance by a physician of the duties which

are devolved and incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act." ***Fessenden v. Robert Packer Hosp.***, 97 A.3d 1225, 1229 (Pa.Super. 2014) (citation omitted). In order to set forth a *prima facie* cause of action for medical malpractice, a plaintiff must establish "a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm." ***Id***. Of import herein is the precept: "With all but the most self-evident medical malpractice actions, there is also the added requirement that **the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation**." ***Id***.

Herein, the Snyders rely upon a "narrow exception to the requirement that medical malpractice claims be supported by expert testimony;" "this exception applies in those instances where the malpractice is obvious and the medical and factual issues presented are such that a lay juror could recognize negligence just as well as any expert." ***Id***. at 1230. Specifically, they invoke the doctrine of *res ipsa loquitur*; which is Latin for "the thing speaks for itself." *Res ipsa loquitur* can be utilized only when all of these elements are present:

> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

*Id*. (quoting Restatement (Second) of Torts § 328D(1)).

The Snyders refer us to **Jones v. Harrisburg Polyclinic Hosp.**, 437 A.2d 1134 (Pa. 1981), where the plaintiff suffered from suprascapular nerve palsy, *i.e.*, intense pain in her neck, shoulder, and arm, after she underwent a gynecological procedure. The plaintiff averred that her arm had been misplaced during the medical events, which involved moving her into different positions. Our Supreme Court ruled that *res ipsa loqutur* applied, opining that suprascapular nerve palsy in the affected areas would "not ordinarily occur during [the] gynecological procedures as were employed on [the plaintiff] in the absence of negligence." **Id**. at 1139. **See also Quinby v. Plumsteadville Family Practice, Inc.**, 907 A.2d 1061 (Pa. 2006) (*res ipsa loquitur* charge warranted when an unattended quadriplegic fell from an examination table during a minor operation and injuries from the fall caused his death); **Fessenden**, **supra** (leaving a sponge inside a patient during an operation constitutes obvious negligence and an expert witness report is not necessarily to make out a *prima facie* case of medical malpractice).

In this lawsuit, the Snyders premise liability on the misplaced internal jugular line, Appellees' failure to recognize that fact, and Appellees' inability

to stabilize Ms. Snyder's internal bleeding. Appellant's brief at 7. Herein, as the trial court aptly noted, the common layperson would not know whether a jugular central line can be misplaced even when a doctor has not been negligent and has exercised reasonable care. Likewise, an ordinary person would not be familiar with the signs of a misplaced jugular central line, and, accordingly, whether Appellees should have detected the issue. Finally, a layperson would have no idea whether Ms. Snyder's prolonged intubation caused her claimed harm.

Simply put, the medical events in this case involve complex medical issues and procedures that are beyond the ken of an ordinary person. **See MacNutt v. Temple Univ. Hosp., Inc.**, 932 A.2d 980 (Pa.Super. 2007) (plaintiff could not use the doctrine of *res ipsa loquitur* to create inference that surgeon was negligent in causing chemical burn to patient's shoulder during surgery to correct a condition that rendered patient's arms intermittently cold and paralyzed). The events in question could have happened even though Appellees exercised reasonable care, and the Snyders failed to establish the first element of the *res ipsa loquitur* doctrine. Hence, expert testimony was necessary to establish that the Appellees were negligent. The trial court did not abuse its discretion or commit an error of law in opining that the lack of an expert opinion was fatal to the Snyder's case. Hence, we affirm its grant of summary judgment in favor of Appellees.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2017