J-A24020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NICHOLL JACKSON, AN INCAPACITATED PERSON BY HER COURT APPOINTED CO-GUARDIANS, ARLENE HINKLE AND THERESA CAINES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| ALLEGHENY VALLEY SCHOOL | |
| Appellee | No. 3042 EDA 2014 |

Appeal from the Order Entered on September 25, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No.: April Term, 2013 No. 5171

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **Filed December 18, 2015**

Nicholl Jackson's court appointed co-guardians Arlene Hinkle and Theresa Caines (collectively, "Appellants") appeal the September 25, 2014 order granting summary judgment in favor of Allegheny Valley School ("AVS").  We affirm.

Nicholl Jackson suffers from profound intellectual disability.[1]  Jackson is non-verbal and has a prior well-documented history of seizures,

_____

[*]     Retired Senior Judge assigned to the Superior Court.

[1]     Although the parties refer to Jackson's condition as profound "mental retardation," ***see, e.g.***, Brief for Appellants at 5, we use the term "intellectual disability" to describe the identical phenomenon.  ***See Hall v. Florida***, 134 S. Ct. 1986, 1990 (2014) (noting that the most recent edition
*(Footnote Continued Next Page)*

maladaptive behaviors, and self-injury. In March 2011, Jackson was admitted to AVS, a non-profit residential facility for individuals with intellectual and developmental disabilities. AVS developed multiple treatment plans to manage Jackson's various conditions and symptoms. For example, AVS completed a psychotropic medication review plan on March 15, 2011, which provided as follows:

> [Jackson] is a 26-year-old female with profound [intellectual disability] and diagnoses of impulse control disorder and bipolar disorder. Target behaviors include SIB [(self-injurious behavior)], physical aggression, [and] physical disruption. She is described as impulsive with variable moods. She demonstrates self[-]injurious behaviors (striking self in face, scratching herself, and biting herself) multiple times daily. . . . [Jackson] also regularly demonstrates rectal digging, fecal smearing, pica,[2] and elopement.

AVS' Motion for Summary Judgment, 8/4/2014, at Exh. Q (minor modifications for clarity).

On March 21, 2011, AVS also developed a behavior management plan targeted to Jackson's pica. That plan called for Jackson to remain within a five-foot radius of an AVS staff member during all waking hours so that she

*(Footnote Continued)* ————————————

of the Diagnostic and Statistical Manual of Mental Disorders adopts this terminology).

[2] Pica is defined as a tendency or craving to consume substances that have no nutritional value. For example, persons with pica may consume paper, clay, metal, chalk, soil, glass, or sand. ***See*** *Pica (disorder)*, Wikipedia, https://en.wikipedia.org/wiki/Pica_(disorder) (last visited Dec. 8, 2015).

could be reached quickly if she attempted to chew or ingest any non-edible objects.

Jackson's self-injurious behavior continued after her admission to AVS. On April 7, 2011, Jackson hit herself in the face with a cup at lunchtime, resulting in a laceration and bruise on her eyelid. *Id.* at Exh. R. One week later, an AVS nurse observed scattered bruises on Jackson's arms, which were consistent with self-injury. *Id.* at Exh. S. On May 4, 2011, Jackson was seen by a physician after an AVS staff member noticed that Jackson's hand was swollen and that she had a bruise on her left cheek. Both injuries were attributed to Jackson's self-injury. *Id.* at Exh. T.

On May 8, 2011, Appellants visited Jackson at AVS, and noticed bruising on her face, arms, and breasts. Jackson was taken to Nazareth Hospital. There, the emergency department physician noted bruising on Jackson's cheek, hand, chest, and lower legs, and scratch marks on Jackson's neck and back. The Philadelphia Police Department conducted an investigation into Jackson's injuries and interviewed multiple AVS employees, but did not file any criminal charges.

On May 11, 2011, Appellants removed Jackson from AVS. On May 3, 2013, Appellants instituted this action against AVS on behalf of Jackson. In their complaint, Appellants alleged that AVS agents and/or employees abused and neglected Jackson during her residency at AVS, and that AVS was negligent in failing to prevent that abuse and neglect.

On June 21, 2013, AVS filed notice of its intent to enter a judgment of *non pros* due to Appellants' failure to file a certificate of merit.[3] In response, Appellants filed a motion to determine whether a certificate of merit was necessary in this case. Therein, Appellants explained as follows:

> There are no allegations in [Appellants'] complaint of any deviation in medical professional standards regarding the care and treatment of [Jackson], but to the contrary, the allegations "sound" in ordinary negligence based upon [AVS'] failure to supervise the care and treatment of [Jackson] in such a way that would prevent any physical assault.
>
> * * * *
>
> [Appellants'] only allegations are that [AVS] allowed [Jackson] to be assaulted and [that Jackson] suffered serious injury as a direct result thereof. . . . [Appellants'] complaint does not raise questions of medical judgment, medical care, or any actions involving diagnosis, care and treatment by licensed professionals.

---

[3] Pa.R.C.P. 1042.3(a) requires plaintiffs in medical malpractice cases to file a certificate of merit, stating that either:

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa.R.C.P. 1042.3(a).

Appellants' Motion to Determine the Necessity of Filing a Certificate of Merit, 7/1/2013, at 2-5 (emphasis in original). On August 15, 2013, the trial court ruled that Appellants were not required to file a certificate of merit.

On August 4, 2014, after the completion of discovery, AVS filed a motion for summary judgment. In that motion, AVS argued that Appellants failed to produce any evidence establishing a *prima facie* case of negligence. AVS additionally argued that the immunity provisions of both the Mental Health Procedures Act and the Mental Health and Intellectual Disability Act preclude Appellants' claims. *See* 50 P.S. §§ 7114 and 4603, respectively.

On September 25, 2014, the trial court issued a memorandum opinion and order granting AVS' motion for summary judgment. Therein, the trial court held that Appellants failed to demonstrate a *prima facie* case of negligence. The court noted that, "other than conjecture, it does not appear that *any* evidence has been put forth that *any* actual physical assault by a third party took place." Trial Court Opinion ("T.C.O."), 9/25/2014, at 1 (emphasis in original). The trial court also held that the doctrine of *res ipsa loquitur* was not applicable to Appellants' claim because they did not establish that Jackson's injuries were "[of] a sort that normally would not have occurred in the absence of [AVS'] negligence." *Id.* at 2.

On October 16, 2014, Appellants filed a notice of appeal. The trial court did not order Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellants did not file one.

Appellants present six issues for our consideration:

1. Whether there is sufficient evidence in the pre-trial record that raise [*sic*] any genuine questions of material fact to allow this case to proceed to trial?

2. Whether the doctrine of *res ipsa loquitur* is applicable?

3. Whether there was sufficient evidence is [*sic*] the pre-trial record to establish causation?

4. Whether this case is one of ordinary or professional negligence?

5. Whether the Mental Health Procedure Act or Mental Health Retardation Act are [*sic*] applicable?

6. Whether Appellants could recover punitive damages?

Brief for Appellants at 4-5.[4]

Appellants' first four questions can be condensed into a single inquiry, to wit, whether Appellants adduced evidence sufficient to establish a *prima facie* case of negligence. Because we conclude that they did not, we need not discuss Appellants' fifth and sixth issues.

_____

[4] We have reordered Appellants' issues for ease of disposition. We also note that, although Appellants identify six distinct questions for our review, they do not correspondingly divide the argument section of their brief into six separate sections. Instead, Appellants' argument section consists of five sections, some of which do not parallel any of Appellants' questions presented. ***See, e.g.***, Brief for Appellants at 20 (section entitled "Nicholl Jackson's self[-]injurious behavior"). Our Rules of Appellate Procedure require that the argument section be "divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). Nonetheless, we will exercise our discretion to overlook this procedural error because it does not impede substantially our review of the merits of this appeal. ***See*** Pa.R.A.P. 105(a), 2101.

Our standard of review of a trial court's order granting summary judgment is well settled:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1261-62 (Pa. Super. 2013) (quoting *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001)).

It is axiomatic that the mere occurrence of an injury, standing alone, is insufficient to establish a cognizable claim for negligence. *McDonald v. Aliquippa Hosp.*, 606 A.2d 1218, 1220 (Pa. Super. 1992). A plaintiff must demonstrate the presence of a legal duty or obligation; a breach of that duty; a causal link between that breach and the injury alleged; and actual damage or loss suffered by the claimant as a consequence of thereof. *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa. Super. 2005).

Although Appellants take note of these elements, **see** Brief for Appellants at 13, they do not point to any evidence of record that would allow a jury to conclude that Appellants demonstrated each of those elements. Instead, Appellants contend that the doctrine of *res ipsa loquitur* would allow the jury "to infer that the harm suffered was caused by the negligence of [AVS]." **Id.** at 14. We disagree.

In instances of obvious negligence, *i.e.*, circumstances in which the medical and factual issues presented are such that a lay juror could recognize negligence just as well as any expert, the doctrine of *res ipsa loquitur*[5] allows a fact-finder to infer from the circumstances surrounding the injury that the harm suffered was caused by the negligence of the defendant. **Jones v. Harrisburg Polyclinic Hosp.**, 437 A.2d 1134, 1137 (Pa. 1981). The doctrine applies whenever:

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

_____

[5] The phrase *res ipsa loquitur*, translated from Latin, means "the thing speaks for itself." Black's Law Dictionary (9th ed. 2009).

Restatement (Second) of Torts § 328D(1) (1965); ***Gilbert v. Korvette, Inc.***, 327 A.2d 94, 100 (Pa. 1974) (adopting the Restatement's formulation of *res ipsa loquitur*).

*Res ipsa loquitur* merely is a shorthand expression for a rule of evidence that allows a jury to infer negligence and causation where the injury at issue is one that does not ordinarily occur in the absence of negligence. ***Bearfield v. Hauch***, 595 A.2d 1320, 1322 (Pa. Super. 1991). Although *res ipsa loquitur* was intended to be a "far more realistic, logical, and orderly approach to circumstantial proof of negligence," ***Gilbert***, 327 A.2d at 100, it has caused significant confusion.[6] Stated simply, where a plaintiff proves all three of section 328D's elements, the question of whether an inference of negligence should be drawn is for the jury. ***Leone v. Thomas***, 630 A.2d 900, 901 (Pa. Super. 1993) (citing Restatement § 328D(3)).

Here, Appellants' discussion of section 328D's requirements consists entirely of conclusory assertions. For example, Appellants maintain that,

---

[6] ***See*** William L. Prosser, Handbook of the Law of Torts § 39, at 213 (4th ed. 1971) ("*Res ipsa loquitur* . . . has been the source of so much trouble to the courts that the use of the phrase itself has become a definite obstacle to any clear thought, and it might better be discarded entirely.") (footnote omitted)); ***Potomac Edison Co. v. Johnson***, 152 A. 633, 636 (Md. 1930) (Bond, C.J., dissenting) ("It adds nothing to the law, has no meaning which is not more clearly expressed for us in English, and brings confusion to our legal discussions.").

"[t]ypically, severe injuries to [incapacitated] person[s] do not occur absent some negligence." Brief for Appellants at 15. However, it is less clear whether a person with Jackson's medical history, which includes an extensive and well-documented pattern of self-injury, normally would suffer bodily injury absent the negligence of her caregivers. As explained *supra*, *res ipsa loquitur* allows a fact-finder to infer negligence only in the most obvious cases, where "the medical and factual issues presented are such that a lay juror could recognize negligence just as well as any expert." **Jones**, 437 A.2d at 1137. This is not such a case. **Cf. Fessenden v. Robert Packer Hosp.**, 97 A.3d 1225, 1231 n.7 (Pa. Super. 2014), *appeal denied*, 113 A.3d 280 (Pa. 2015) (holding that a jury can conclude, "as a matter of general knowledge," that laparotomy sponges are not left inside of a patient's abdomen after surgery absent negligence).

Moreover, Appellants cannot rely upon *res ipsa loquitur* because they failed to eliminate "other responsible causes, including the conduct of the plaintiff." Restatement (Second) of Torts § 328D(1) (1965). The Restatement explains as follows:

> It is never enough for the plaintiff to prove that he was injured by the negligence of some person unidentified. It is still necessary to make the negligence point to the defendant. On this too the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where there is no doubt that it is at least equally probable that the negligence was that of a third person, the court must direct the jury that the plaintiff has not proved his case. Again, however, the plaintiff is not required to exclude all other possible conclusions beyond a reasonable doubt, and it is enough that he makes out a case from which the

jury may reasonably conclude that the negligence was, more probably than not, that of the defendant.

Restatement (Second) of Torts § 328D, cmt. f (1965).

In ***Quinby v. Plumsteadville Family Practice, Inc.***, 907 A.2d 1061 (Pa. 2006), our Supreme Court applied *res ipsa loquitur* to a case involving a quadriplegic patient who was left unaccompanied on a medical examination table, which lacked safety rails or other restraints, after a surgical procedure. The plaintiff fell from the examination table and suffered severe injuries, which purportedly resulted in his death. Finding that the evidence sufficiently eliminated other responsible causes of the plaintiff's injuries, the ***Quinby*** Court explained as follows:

> [T]he critical inquiry as to whether this subsection of § 328D is satisfied is whether a particular defendant is the responsible cause of the injury. ***Jones***, 437 A.2d at 1139.
>
> It is undisputed that there is no explanation for Decedent's fall beyond Defendants' negligence. No one else entered the examination room; the table did not break; nothing fell on or near it; there was no seismic disturbance in the area, etc. Given Decedent's full-body paralysis, all agree that there was no way he could have been responsible for his fall. Indeed, his condition made it impossible for him to even understand how or why he fell. Thus, Quinby has established that the fall is not the type of event that occurs in the absence of negligence, and that there is no explanation other than Defendants' negligence for the fall.

***Quinby***, 907 A.2d at 1072-73 (some citations omitted).

Even when viewed in the light most favorable to Appellants, the evidentiary record before us falls far short of establishing that AVS more probably than not was negligent. Appellants' expert stated only that

Jackson's injuries were caused by blunt trauma. He could not determine whether Jackson's injuries were the result of abuse or neglect, or whether they were self-inflicted. Unlike in **Quinby**, where it was undisputed that no explanation other than the defendant's negligence existed, Appellants' own evidence clearly leaves open the possibility that Jackson's injuries were self-inflicted. Because Appellants have not eliminated all "other responsible causes, including the conduct of the plaintiff," as is required by section 328D of the Restatement, the trial court held correctly that the doctrine of *res ipsa loquitur* was not applicable to Appellants' claims.

Finally, Appellants argue that the trial court erred in entering summary judgment because AVS is liable for Jackson's injuries regardless of their genesis. Appellants contend that, "while it could be determined by the jury that the injuries were the result of self-injurious behavior, this would nonetheless mean that AVS was negligent in permitting [Jackson] to injure herself." Brief for Appellants at 15. This argument is unavailing, for several reasons. First, Appellants have offered no expert evidence to establish the applicable standard of care under these circumstances.[7] Second, Appellants

---

[7] Throughout their brief, Appellants imply that AVS had a duty to monitor Jackson one-on-one and to remain within a five-foot radius of Jackson at all waking hours. This language is found within multiple internal behavior management plans, which AVS drafted and used as a tool to monitor Jackson's several coexisting behavioral disorders. Appellants have not demonstrated that AVS' internal treatment plans are illustrative of the standard of care required under the circumstances, and, more importantly,

*(Footnote Continued Next Page)*

have not produced any evidence that AVS deviated from that standard of care. Third, since the earliest stages of this litigation, Appellants have maintained that their claims do not implicate AVS' care and treatment of Jackson. Indeed, Appellants bypassed the requirement that plaintiffs in medical malpractice cases file a certificate of merit by arguing that:

> [t]here are no allegations in [Appellants'] complaint of any deviation in medical professional standards regarding the care and treatment of [Jackson], but to the contrary, the allegations "sound" in ordinary negligence based upon [AVS'] failure to supervise the care and treatment of [Jackson] in such a way that would prevent any physical assault.
>
> * * * *
>
> [Appellants'] only allegations are that [AVS] allowed [Jackson] to be assaulted and [that Jackson] suffered serious injury as a direct result thereof. . . . [Appellants'] complaint does not raise questions of medical judgment, medical care, or any actions involving diagnosis, care and treatment by licensed professionals.

Appellants' Motion to Determine the Necessity of Filing a Certificate of Merit, 7/1/2013, at 2-5 (emphasis in original). Now, before this Court, Appellants endeavor to prosecute a professional liability claim against AVS. However, this theory of liability, just like Appellants' ordinary negligence claim, lacks any evidentiary support.

Appellants work backwards from the premise that AVS must be liable for Jackson's injuries because those harms occurred during Jackson's

_(Footnote Continued)_ ─────────────

Appellants have failed to adduce any evidence of AVS' noncompliance with its behavior management plans.

residency at AVS. However, it is well settled that the mere occurrence of an injury, standing alone, is insufficient to establish a cognizable claim for negligence. *McDonald*, 606 A.2d at 1220. "In fact, the trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 568 (Pa. Super. 2014). Based upon the factual inadequacies of the record in this case, the trial court did not err in concluding that AVS was entitled to judgment as a matter of law. *See Murray*, 63 A.3d at 1261 ("Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.").

Order affirmed.

Judge Panella joins the memorandum.

Judge Strassburger files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2015

- 14 -